402 So.2d 214 (1981)
BILL NOLAN LIVESTOCK, INC.
v.
Joseph SIMPSON.
No. 14268.
Court of Appeal of Louisiana, First Circuit.
June 29, 1981.
Writ Denied September 28, 1981.
*215 Michael R. Connelly and Jack Rogers, Baton Rouge, for plaintiff-appellant.
Joseph H. Simpson and Charles M. Reid, Amite, for defendant.
Before ELLIS, COLE and WATKINS, JJ.
COLE, Judge.
The issue presented is whether a nonresident defendant suing his court appointed attorney for malpractice has a cause of action in contract or whether he is limited to a cause of action in tort.[1] The facts giving rise to this litigation are as follows:
Bill Nolan Livestock, Inc. (hereinafter referred to as Nolan Livestock) is a livestock exportation business domiciled in Wisconsin. *216 In 1972 and 1973 Nolan Livestock advertised its stock in several Louisiana journals. In March of 1973 Frank M. Edwards, Jr. of Tangipahoa Parish purchased 60 head of dairy calves from Nolan Livestock. The calves were delivered, the price paid and Nolan Livestock heard nothing more from Edwards. On November 17, 1973, in response to an order placed by a third party, another shipment of calves from Nolan Livestock arrived in Tangipahoa Parish. As they were being delivered sheriff's deputies, pursuant to a writ of attachment obtained by Edwards, seized the calves and the truck in which they were being transported.
Bill Nolan, the president and principal stockholder of the plaintiff corporation, contacted Edwards and was informed some of the calves previously purchased by Edwards had died. Nolan sought representation from several attorneys in Tangipahoa Parish, including defendant, Joseph H. Simpson, but all declined to represent him. He then retained a New Orleans attorney, Mr. George Reese.
To seek legal redress for his claim against Nolan Livestock, Edwards filed two suits. His first petition (docket number 43,213) was filed November 8, 1973. In this action Edwards sought only a money judgment and directed that service be made on Nolan Livestock through the Secretary of State. Such service was effected on November 12, 1973 and on January 11, 1974 a default judgment for $6,121 was rendered. Although Edwards had not sought to attach any property (nor had a writ of attachment issued or counsel been appointed to represent defendant), the judgment also ordered "that the writ of attachment be maintained" and that "the said property be sold."
The second suit filed by Edwards (docket number 43,226) was entitled "Petition for Writ of Attachment." It is in this suit, filed November 12, 1973, that the instant defendant, Joseph H. Simpson, was appointed to represent Nolan Livestock. Edwards' petition prayed for 1) the appointment of an attorney to represent the absent defendant, 2) for a writ of attachment, 3) for a money judgment and, 4) for maintenance of the writ and sale of the property attached. Although the citation in this action was addressed to Nolan Livestock, through the duly appointed attorney ad hoc, Joseph H. Simpson, the record of this proceeding shows personal service of a certified copy of the citation and of the petition was made on November 17, 1973 upon one Robert Smith. The record also shows a certified copy of the notice of seizure and notice to appoint an appraiser, listing the calves and the truck, was served upon Robert Smith, identified as being from Leopolis, Wisconsin and the truck driver for Nolan Farm. In addition, a notation found in the record, from which the official return apparently was prepared, completely identifies Robert Smith, gives the name and address of the person accompanying him, and notes the items attached.
George Reese, in furtherance of his representation of Nolan Livestock, proceeded to make the necessary contacts in Tangipahoa Parish. On December 20, 1973 counsel for Edwards wrote to Reese advising it did not appear they could settle the problem and asked Reese to file an answer. Reese did not file an answer but on February 1, 1974 a general denial was filed by Simpson in Edwards' second suit, the one in which Simpson had been appointed. On the same day a hearing was held, with Simpson appearing as attorney ad hoc for the defendant, and judgment was rendered [2] decreeing the writ of attachment be maintained and plaintiff's lien and privilege resulting from judgment in the prior suit (docket number 43,213) be recognized and enforced. No money judgment was rendered in this second action.
Pursuant to the rather confusing litigation above outlined, Edwards executed on his judgments by having the calves sold at *217 Sheriff's sale. A week later, on March 13, 1974, he entered into a "Release of Judgment" agreement with Nolan Livestock wherein the parties settled all their differences. This agreement apparently effected the release of the truck and, strangely, released George Reese from any negligence or damages "as a result of his handling of a defense of Bill Nolan Livestock, Inc."
In September 1980, Nolan Livestock filed suit against Joseph Simpson alleging he had committed malpractice by breaching his professional and contractual duties. Simpson had allegedly failed to take any steps to contact Nolan Livestock in order to inform them of the suit in which he had been appointed attorney ad hoc and to inquire about potential defenses. Nolan Livestock stated it learned in October 1979 that Mr. Simpson had been appointed to represent it.
Defendant Simpson filed the peremptory exception urging the objection of prescription, as authorized by La.Code Civ.P. art. 927. A hearing was held on the matter, involving testimony relating more to the merits of the case than to the issue of prescription. Judgment was rendered sustaining the exception and the suit was dismissed. Nolan Livestock has appealed.
In oral reasons for judgment the trial court stated it was aware that in the usual situation in which a client retains an attorney the client has a cause of action in both tort and contract against the attorney for malpractice. Jackson v. Zito, 314 So.2d 401 (La.App. 1st Cir. 1975), writ refused 1975. Johnson v. Daye, 363 So.2d 940 (La. App. 3d Cir. 1978). The trial court refused to extend the contractual cause of action to the situation at hand, where the relationship was based not upon the mutual consent of the attorney and the client but only upon the court ordering the attorney to represent the nonresident client.
We agree with the trial court and therefore affirm. We are aware the attorney appointed by the court to defend a nonresident has the same general obligations toward the client as does a retained counsel. La.Code Civ.P. art. 5095. However, we do not interpret this article to mean the relationship between the attorney and the client is contractual in nature.
"Contract" is defined by Black's Law Dictionary, Revised Fourth Edition (1968), as "A promissory agreement between two or more persons that creates, modifies, or destroys a legal relation." The La.Civ.Code art. 1761 defines contract as follows: "A contract is an agreement, by which one person obligates himself to another, to give, to do or permit, or not to do something, expressed or implied by such agreement." It is clear the essential ingredient of a contract is an agreement. When the court appoints an attorney to defend a nonresident there is no agreement between the attorney and the client. We feel it would be an aberration of the word "contract" to characterize such a relationship as being contractual.
We distinguish the situation in the present case from the typical attorney-client relationship where the attorney and client come together voluntarily and there is a meeting of the minds as to the purpose of the relationship. It is entirely logical that courts, as they did in Jackson, supra, and Johnson, supra, would afford a client a contractual remedy for certainly the relationship is one of contract.
If the allegations of the petition are true, the defendant may be responsible under a general tort theory. But there is no contractual liability because there was no contractual relationship. Just as a landowner owes a certain duty to all who come on the premises, a court appointed attorney owes a certain duty to the nonresident client he has been appointed to represent. But this duty arises strictly from the relationship of the parties rather than from any agreement on their behalf.
As an alternative argument Nolan Livestock contends even if the matter is not considered contractual, the doctrine of "contra non valentem agere nulla currit praescripto"[3] *218 should apply to prevent prescription from running during the period in which the corporation was unaware Mr. Simpson had been appointed to represent it. It is well settled this doctrine is not applicable simply because the plaintiff was ignorant of his rights. Martin v. Mud Supply Company, 239 La. 616, 119 So.2d 484 (1959), on rehearing 1960; Jackson, supra. These cases have made it clear the plaintiff must show the defendant has used concealment or fraudulent practices which lulled the plaintiff into a course of inaction to the prejudice of his rights. Nor may a plaintiff employ this doctrine when the ignorance of the facts has been caused by his own neglect. Henson v. St. Paul Fire and Marine Ins. Co., 363 So.2d 711 (La.1978), rehearing denied 1978.
The facts before us indicate Mr. Simpson may have failed to make a reasonable effort to contact Nolan Livestock about the suit. This omission, however, is not colored with deceit or fraud. However, the record also shows he talked to Mr. Nolan on the phone (when Nolan called seeking representation), refused to represent him, and failed to inform Mr. Nolan he had in fact already been appointed by the court as attorney ad hoc for Nolan Livestock. Such behavior may have given plaintiff the false impression there was no court appointment involved when Simpson knew there was such an arrangement.
However, we decline to allow plaintiff to use the doctrine because but for plaintiff's own neglect, it would have learned immediately of Simpson's court appointment. The citation served upon plaintiff's truck driver, Robert Smith, stated clearly that Joseph H. Simpson of Amite, Louisiana was the court appointed attorney. The plaintiff corporation, through Bill Nolan, knew or should have known about this document. If Nolan did not discuss with Robert Smith the documents which had been served at the time the calves and truck were seized or did not ask that they be forwarded to him for review, he was indeed careless. Certainly, he needed to know everything possible about the court action which resulted in the drastic seizure of his livestock and truck. Also, after retaining George Reese, Nolan could have requested that he be informed of all aspects of the legal situation in Tangiphoa Parish. This undoubtedly would have resulted in the disclosure of Simpson's appointment. Instead, Nolan chose not to rely entirely upon counsel but proceeded to negotiate directly with Edwards. Reese's testimony makes this clear. We cannot escape the conclusion plaintiff's own carelessness caused its ignorance of the facts.
Also, considering plaintiff's early representation by George Reese, and assuming for the sake of argument defendant has used concealment or fraudulent practices which lulled plaintiff into a course of inaction, we cannot say defendant's rights were thereby prejudiced. Several weeks before any judgment was rendered against plaintiff, Mr. Reese was actively involved and had been requested to file an answer on behalf of plaintiff. With retained counsel plaintiff was in a position to protect its rights, regardless of inaction on the part of Simpson or his failure to notify plaintiff of the pending suit. It is also significant that Simpson owed no duty to plaintiff in the first suit that had been filed, the suit in which the money judgment was rendered and which later served as the basis for execution against the seized livestock. For this additional reason, the doctrine of "contra non valentem" is inapplicable.
Since this matter is strictly tortious and the tort occurred in 1973, prescription had clearly run by the time suit was filed in 1980. La.Civ.Code art. 3536. The judgment of the trial court is affirmed. Plaintiff-appellant is to pay all costs.
AFFIRMED.
NOTES
[1] Resolution of this issue is determinative of the applicable prescriptive period.
[2] For some unexplained reason, counsel for Edwards had already taken a default judgment (on January 25, 1974) which apparently was ignored or was set aside by the court. There is no explanation contained in the record.
[3] No prescription runs against a person unable to bring an action.