Cecil BROWNE, Plaintiff
Below, Appellant,

v.

James A. ROBB, Defendant
Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 4, 1990.
Decided: Nov. 5, 1990.
Rehearing Denied Dec. 12, 1990.

Cecil Browne, pro se.

James J. Hanley, Deputy Atty. Gen., Dept. of Justice, for appellee.

Before CHRISTIE, C.J., HORSEY and MOORE, JJ.

MOORE, Justice.

We review a plethora of civil claims asserted by plaintiff Cecil Browne against his former counsel, James A. Robb, Esquire. The latter was appointed to represent

Browne, as an indigent accused of a crime, pursuant to 29 *Del.C.* § 4605.[1] After his conviction Browne filed suit against Robb in the Superior Court claiming: (1) legal malpractice; (2) Robb's breach of contract to the court by failing to take certain action during Browne's criminal trial; and (3) common law fraud by Robb's misrepresenting the level of his legal skills and experience. Browne also claimed deprivations of his 4th, 5th, 6th, 8th and 14th Amendment rights and sought $500,000 in punitive damages, $500,000 in compensatory damages and all legal fees.

Robb moved to dismiss for failure to state a claim under Superior Court Civil Rule 12(b)(6). The trial court granted the motion. *Browne v. Robb*, Del.Super., C.A. No. 90C–JA7, Ridgely, J., slip op. (Mar. 2, 1990). We agree and affirm. Mr. Robb, as a court-appointed contract lawyer enjoys qualified immunity from legal malpractice claims under the State Tort Claims Act 10 *Del.C.* §§ 4001–4005. Plaintiff's complaint was insufficient to rebut the presumption of statutory immunity. Browne's appeal of the dismissal of his breach of contract claim against Robb is also meritless. He is not a beneficiary to the agreement between Robb and the State. Thus, he lacks standing to sue on the contract. Finally, Browne cannot sustain a fraud claim against Robb because his complaint did not meet the specificity requirements of Superior Court Civil Rule 9(b).

## I.

Following his most recent trial and conviction, Browne was sentenced to a term of imprisonment. Robb served as counsel for indigent defendants pursuant to 29 *Del.C.* § 4605.[2] He represented Browne in that capacity. The terms of the appointment were established in a contract between Robb and the Superior Court.

Browne's malpractice claims are based on a number of alleged defects in Robb's performance. In an unreported decision the trial judge ruled that Robb enjoyed qualified immunity from malpractice suits under the State Tort Claims Act, and found that Browne's complaint was insufficient to rebut the statutory presumption of immunity. *Browne*, slip op. at 4–5. On appeal Browne contends that a court appointed defense counsel is not entitled to qualified immunity under the State Tort Claims Act.

## A.

We review the trial court's ruling on Robb's 12(b)(6) motion to determine whether Browne's "complaint contain[ed] allegations sufficient to state a cause of action." *Spence v. Funk*, Del.Supr., 396 A.2d 967, 973 (1978). The complaint sufficiently states a cause of action when a plaintiff can recover "under any reasonably conceivable set of circumstances susceptible of proof under the complaint." *Id.* at 968. All facts stated in the complaint are accepted as truthful. *Id.*

The State Tort Claims Act grants, in part, general qualified immunity to certain state officials and employees. 10 *Del.C.* § 4001. Specifically, the statute immunizes any "public officer or *employee*, including the members of any board, commission, conservation district or agency of the State, whether elected or *appointed*...." *Id.* (emphasis added). The relevant issue,

---

1. This is not the first instance of a dispute arising between Browne and his various counsel. *See Browne v. State,* Del.Supr., 567 A.2d 419 (1989) (ORDER) (post-conviction relief application claiming ineffective assistance of counsel at probation hearing rejected); *Browne v. State,* Del.Supr., 567 A.2d 419 (1989) (ORDER) (public defender withdrew representation at trial after receiving threat from Browne); *Browne v. State,* Del.Supr., 494 A.2d 164 (1984) (ineffective assistance of counsel claim upheld when counsel failed to advise Browne of right to appeal criminal conviction); *Browne v. State,* Del.Super., Cr.A. No. K88–05–0117A, Steele, J., 1988 WL 130426 (Nov. 17, 1988) (ORDER) (inef-

fective assistance of counsel claim rejected on procedural grounds).

2. Section 4605 provides:

   For cause, the court may, on its own motion or upon the application of the Public Defender or the indigent person, appoint an attorney other than the Public Defender to represent him at any stage of the proceedings or on appeal. The attorney shall be awarded reasonable compensation and reimbursement for expenses necessarily incurred to be fixed by the court and paid by the State.

therefore, is whether a lawyer who has been appointed to represent indigent defendants in lieu of the Public Defender, pursuant to 29 *Del.C.* § 4605, is a "public officer or employee" for purposes of the immunity statute.

■ The Superior Court has already ruled in two unreported decisions that court appointed counsel are "employees" for purposes of the State Tort Claims Act and therefore are not liable in any civil suit unless the plaintiff can successfully overcome the presumption of immunity.[3] *See Debro Siddiq Abdul–Akbar v. Anthony A. Figliola,* Del.Super., No. 88C–NO–110–1–CV, Del Pesco, J., slip op., 1990 WL 74326 (May 18, 1990); *Williams v. Durstein,* Del. Super., No. 87C–FE–18, Gebelein, J., slip op., 1988 WL 47308 (Apr. 26, 1988). The *Williams* case represented the first Delaware decision applying qualified immunity under the Tort Claims Act to appointed counsel. The trial judge in that case borrowed the definition of "employee" from the County and Municipal Tort Claims Act and applied it by analogy to immunize appointed counsel under the State Tort Claims Act. Slip op. at 3. The Superior Court's analogy ultimately proves less than adequate although the outcome of the *Williams* decision was ultimately correct. The County and Municipal Tort Claims Act provides that an "employee" means any person acting on behalf of a government entity in an official capacity regardless of whether that person receives compensation for his work. 10 *Del.C.* § 4010(1). The statute, however, also states that an " 'Employee' shall not mean a person or other legal entity acting in the capacity of an independent contractor under contract to the governmental entity." *Id.* By that limitation an appointed lawyer could not be an "employee" within the meaning of the County and Municipal Tort Claims Act since Robb's contract explicitly declared that he "shall function as an independent contractor." Thus, we find the rationale in *Williams* and *Abdul–Akbar* to be unhelp-

ful. That, however, does not end the inquiry.

■ We have already recognized that a public defender is protected by qualified immunity under the State Tort Claims Act. *See Vick v. Haller,* Del.Super., 512 A.2d 249, 252 (1986), *aff'd in part and rev'd in part on procedural grounds,* 522 A.2d 865 (1987). The Court noted in its Order affirming the Superior Court's decision in *Vick* that public defenders were indeed State "employees" within the meaning of the State Tort Claims Act. *Vick v. Haller,* Del.Supr., 522 A.2d 865 (1987) (ORDER). The Court approvingly cited a decision of the United States Supreme Court which presented arguments in favor of granting immunity to public defenders based upon the traditions of the common law. *Id. See Tower v. Glover,* 467 U.S. 914, 921, 104 S.Ct. 2820, 2825, 81 L.Ed.2d 758 (1984). These same policy arguments were similarly echoed in an often-cited dissent of a Pennsylvania Supreme Court decision. *See Reese v. Danforth,* 486 Pa. 479, 406 A.2d 735, 743 (1979) (O'Brien, J., dissenting). These basic common law principles apply with equal force when we consider the status of court appointed contract lawyers as "employees" under the State Tort Claims Act. This is so, because they serve in the same capacity as public defenders, replacing the latter when they are unavailable.

The dissent in *Reese* applied three important public policy reasons justifying this common law tradition: (1) the need for counsel to "fearlessly and independently" litigate claims; (2) the duty to take on any client; and (3) the public interest in avoiding duplicitous litigation. *See* 406 A.2d at 743 (citing Kaus & Matten, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice",* 21 U.C.L.A. L.Rev. 1191, 1192 n. 5 (1974)).

We have already acknowledged in two separate opinions the validity and vitality of the first two justifications for immunizing public officials cited in the *Reese* dissent. In *Doe v. Cates,* Del.Supr., 499 A.2d

---

**3.** A plaintiff must basically plead facts sufficient to raise a reasonable doubt that: (1) his lawyer lacked good faith, (2) acted with gross and wan-

ton negligence and (3) did not act in connection with an official duty. *See* 10 *Del.C.* § 4001(1)–(3).

1175 (1985), we recognized that the State Tort Claims Act was "intended to discourage lawsuits which might create a chilling effect on the ability of public officials or employees to exercise their discretionary authority." *Id.* at 1181; *see* 61 Del.Laws 431 (synopsis) (1977). The potential "chilling effect" that the threat of legal malpractice suits has against court appointed contract attorneys without some qualified immunity is especially evident considering the unique relationship between a contract attorney and his client. The *Reese* dissent understood that the public defender, unlike private counsel, was "not free to contract with his client." 406 A.2d at 743. More significantly, it was noted that while the private lawyer is similar to an "entrepreneur," the public defender could not, among other things, weight the threat and potential for gain in bringing litigation or even reject his client if the merits of the case were not worthy. *Id.*

Indirectly, this Court has affirmed the *Reese* dissent's view of the special relationship that exists between an indigent client and his appointed counsel. In *Lindh v. O'Hara,* Del.Supr., 325 A.2d 84 (1974), the analogy between private counsel and court appointed lawyers was rejected in the ruling that the latter were not entitled to the market rate for their services under the statutory term "reasonable compensation". *Id.* at 92; *see* 29 *Del.C.* § 4605. *Lindh* holds that "reasonable compensation" was not equivalent to the rate a lawyer could charge for his services in the market. Representation of an indigent client is not a mere voluntary undertaking, but is part of a lawyer's obligation to "the professional tradition he assumed upon being admitted to the Bar and becoming an officer of the Court." 325 A.2d at 92 (footnote omitted).

We find, therefore, that the special attorney-client relationship that exists between court appointed counsel and indigent persons accused of a crime mandates that the former be entitled to qualified immunity from certain civil suits under the State Tort Claims Act. These contract lawyers do not have the ability, which they ordinarily would possess in the marketplace, to reject such clients or cases. Under the circumstances, a failure to recognize the statutory and common law principles of qualified immunity would unnecessarily "chill" the private contract attorney system that 29 *Del.C.* § 4605 mandates.

**B.**

■ We thus turn to the sufficiency of Browne's complaint to overcome the requirements of the State Tort Claims Act. The statute recognizes that immunity from civil suits is conferred when:

(1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulation, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or anyone over whom the public officer, employee or member shall have supervisory authority;

(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

(3) The act or omission complained of was done without gross or wanton negligence.

10 *Del.C.* § 4001.

A brief examination of Browne's complaint reveals that the trial court correctly dismissed the suit. The allegations are vague at best, and thus do not support a claim for legal malpractice. The statute provides that "the plaintiff shall have the burden of proving absence of one or more" of the immunity elements. 10 *Del.C.* § 4001(3). Browne did not, indeed he cannot, allege that Robb was acting outside of his official capacity by representing Browne in his criminal trial. *See* 10 *Del.C.* § 4001(1). Browne claims, however, that Robb acted in bad faith and with gross negligence by: (1) failing to properly exercise his legal skills; (2) failing to locate and interview known witnesses; (3) failing to investigate victims for impeachment pur-

poses; (4) failing to locate expert witnesses; (5) failing to secure documentary evidence; (6) failing to file requisite motions to dismiss; (7) failing to collect necessary evidence; and finally, (8) failing to appear for several hearings.

All of those allegations are conclusory. They violate Rule 9(b) of the Superior Court Civil Rules of Procedure, which requires a plaintiff to state the circumstances involving all allegations of fraud, negligence, mistake or condition of mind with particularity. The Delaware courts recognize that the particularity standard is more relaxed in cases involving mere negligent breaches of duty caused by inaction or an omission. *See Phillips v. Delaware Power & Light Co.*, Del.Super., 194 A.2d 690, 697–98 (1963). The courts also recognize, however, that the purpose of the particularity standard is to alert the defendant to his potential liability and that it is insufficient to merely " 'make a general statement of the facts which admits of almost any proof to sustain it.' " *See Mancino v. Webb*, Del.Super., 274 A.2d 711, 713 (1971) (quoting *Universal Oil Products Co. v. Vickers Petroleum Co.*, Del.Super., 16 A.2d 795, 797 (1940)). Furthermore, the complaint alleged that Robb acted without good faith in a grossly negligent fashion. Gross negligence is a higher level of negligence representing "an extreme departure from the ordinary standard of care." *See* W. PROSSER, HANDBOOK OF THE LAW OF TORTS 150 (2d ed. 1955).

A brief review of Browne's complaint confirms that he totally failed to state a legal malpractice claim against Robb in sufficient detail. The complaint is merely a recitation of conclusory charges totally lacking in specificity. For example, Browne created a laundry list of Robb's alleged abuses without stating any facts to support a claim that he acted in bad faith, or that Robb's conduct was "an extreme" departure from standard negligent conduct. Browne, for example, talismanically claimed that "[d]efendant did with gross negligence and bad faith fail [sic] to collect necessary [sic] evidence to prepare for trial." He did not identify what evidence was available or how the evidence was neces-

sary for trial. In fact, Browne totally failed to include a single specific charge in the entire complaint.

Accordingly, we agree with the trial court that Browne's pleadings were insufficient to overcome the statutory grant of qualified immunity under 10 *Del.C.* § 4001. The complaint was properly dismissed under Superior Court Civil Rule 12(b)(6).

## II.

■ Browne also claimed that Robb allegedly failed to perform certain tasks during the criminal trial and therefore breached his contract with the court to render skillful legal representation. Browne argued that he was entitled to enforce Robb's contract because he was "a beneficiary of the contract that defendant did enter into as specified [in the complaint]." The trial court dismissed Browne's claim under Superior Court Civil Rule 12(b)(6) because it found that the court merely appointed Robb to represent Browne and therefore there was "no contractual relationship established as a result of that appointment." *Browne v. Robb*, Del.Super., C.A. No. 90C–JA7, Ridgely, J., slip op. at 3 (Mar. 2, 1990). The trial court ruled that Browne failed to plead facts sufficient to support the claim that Browne was a third party beneficiary to the contract and had standing to enforce the agreement. *Id.* We agree, and conclude that the client of a court appointed counsel does not have standing to enforce a contract authorized under 29 *Del.C.* § 4605.

## A.

We have already recognized the existence of the unique attorney-client relationship between an indigent defendant accused of crime and his or her court appointed contract lawyer. *See* Part I.A., *supra.* Court appointed counsel cannot "bargain" with their indigent clients and, unlike their colleagues in private practice, they cannot accept or reject certain clients or cases. *See, e.g., Tower v. Glover*, 467 U.S. 914, 921, 104 S.Ct. 2820, 2825, 81 L.Ed.2d 758 (1984); *Lindh v. O'Hara*, Del.Supr., 325 A.2d 84, 92 (1974); *Reese v. Danforth*, 486

Pa. 479, 406 A.2d 735, 743 (1979) (O'Brien, J., dissenting). This circumstance strongly militates against the concept of a contractual relationship upon which the client can sue.[4] However, our analysis of Browne's contract claim does not end there.

The fact that there is no direct contractual relationship between Browne and Robb does not necessarily preclude a claim under a third party beneficiary theory. The trial court ruled that Browne's simple assertion that he was a "beneficiary" of the contract was insufficient to support a third party contract claim. *Browne,* slip op. at 3. In our view, however, Browne and others similarly situated have no third party standing to enforce a 29 *Del.C.* § 4605 contractual claim.

The Delaware courts clearly recognize that a third party "beneficiary" may sue to collect damages for breach of contract. *See Blair v. Anderson,* Del.Supr., 325 A.2d 94, 96 (1974); *Astle v. Wenke,* Del.Supr., 297 A.2d 45, 47 (1972). Third party beneficiaries generally fall into two classes including donee beneficiaries and creditor beneficiaries. *See* 4 A. CORBIN, CORBIN ON CONTRACTS § 774, at 6 (1951).[5] A donee beneficiary has someone else's performance donated to him as a gift secured by the promisee's consideration. *Id.* A person becomes a creditor beneficiary when the promisee owes a duty or liability to the beneficiary and the promisee secures a contract with another party whose performance satisfies the obligation to the beneficiary. *Id.* at 6–7. Indeed, Browne claimed that he was a creditor beneficiary to the contract between Robb and the Superior Court, arguing that 29 *Del.C.* § 4605 created a legal duty between the promisee (the court) and the third party beneficiary (Browne). Robb countered that Browne

did not have third party standing to sue as a creditor beneficiary because both Robb and the court "have no legal obligation to represent Browne."

Delaware courts recognize third party standing to sue in contract under the creditor beneficiary theory standard when the promisee owes some legal duty to the third party, *see Pajewski v. Perry,* Del.Supr., 363 A.2d 429, 431 (1976) (no standing because promisee owed no duty to third party beneficiary), and there is some merit to Browne's claim under Delaware law. *See Blair,* 325 A.2d at 96. This Court ruled in *Blair* that a federal prisoner could sue the State pursuant to a contract between Delaware and the federal government. 325 A.2d at 97. The contract provided that Delaware would incarcerate federal prisoners in its jails in return for a certain specified sum of money. *Id.* at 95. The Court found that the prisoner was a creditor beneficiary because the promisee, the federal government, owed a statutory duty to protect and safeguard its own prisoners. *Id. See* 4 A. CORBIN, *supra,* § 787, at 97 (creditor "may properly be used broadly to include any obligee to whom the promisee owes a duty"). Similarly, Delaware has a statutory duty to provide indigents with effective assistance of counsel in certain cases through the public defenders office. *See* 29 *Del.C.* § 4602. Indeed, 29 *Del.C.* § 4602 was enacted to give force to the constitutional right to legal representation in criminal proceedings. *See Waters v. State,* Del.Supr., 440 A.2d 321, 323 (1981); *Moore v. State,* Del.Supr., 268 A.2d 875, 876 (1970). The *Blair* decision, however, is not fully dispositive of the issue.

Professor Corbin recognized the difficulty in categorizing third parties as either creditor, donee or incidental beneficiaries.

---

**4.** At least two other jurisdictions have recognized that there is no direct contractual relationship between appointed counsel and his client even though the lawyer does owe certain professional *duties* to the client. *See, e.g., American Mutual Liability Ins. Co. v. Superior Court of Sacramento Co.,* 38 Cal.App.3d 579, 113 Cal. Rptr. 561, 570 (1974) ("[s]ave where appointed by court, the relationship of attorney and client is created by contract"); *Bill Nolan Livestock, Inc. v. Joseph Simpson,* La.Ct.App., 402 So.2d

214, 217, *cert. denied,* 404 So.2d 1260 (1981) (no "meeting of minds" and no contract where court appointed attorney).

**5.** Corbin also defined a third group of third party beneficiaries that do not enjoy standing to sue on a contract. These incidental beneficiaries are an *"omnium gatherum"* default group representing neither donees or creditors. *See* 4 A. CORBIN, *supra,* § 779C, at 41.

*See* 4 A. CORBIN, *supra,* § 779C, at 41. He suggested that courts are less willing to recognize third party standing when their contract interests become more complex and the third party group becomes larger and more poorly defined. *Id.* § 779G, at 53–54. The question of whether a third party has standing to enforce a contract as a creditor beneficiary ultimately involves a question of the promisee's intent to confer a benefit on the third party. *See* 4 A. CORBIN, *supra,* § 776, at 20.

We find that, in the present case, the State did not intend to permit Browne to sue Robb for an alleged breach of the contract. Thus, Browne is merely an incidental beneficiary to the agreement between Robb and the State. Here, unlike *Blair,* we have already found that the special relationship between contract lawyers and their indigent clients: (1) negated the possibility that Browne could maintain a direct breach of contract suit against Robb; and furthermore, (2) prohibited Browne from suing Robb for legal malpractice without overcoming the presumption of Robb's qualified immunity. There is no reason to permit Browne to indirectly accomplish that which he could not do directly. Finally, there is an intervening public policy consideration of recognizing the unique vulnerability of court appointed lawyers, as Browne's past record of suits and claims against his numerous counsel demonstrates. *See supra* note 1, at 2.

In short, there is no standing by a defendant to enforce a 29 *Del.C.* § 4605 contract agreement.[6]

### III.

Finally, Browne claimed that Robb committed common law fraud by allegedly representing that he "was an experienced and competent criminal defense attorney and that [Robb] would provide legal representation to [Browne] that would be skillful and diligent manner [sic]...." Browne also asserted that: (1) Robb made the statement recklessly; (2) Robb induced Browne to accept his representation; (3) Browne justi-

fiably relied on the representation; and (4) he suffered an injury as a result of his reliance. The trial court rejected all of these claims and granted Robb's motion to dismiss, finding that the complaint failed to properly state a claim for common law fraud and that it did not plead such matters with particularity as required by Superior Court Civil Rule 9(b). *See Browne,* slip op. at 4. We agree.

### A.

The general elements of common law fraud under Delaware law are: (1) defendant's false representation, usually of fact, (2) made either with knowledge or belief or with reckless indifference to its falsity, (3) with an intent to induce the plaintiff to act or refrain from acting, (4) the plaintiff's action or inaction resulted from a reasonable reliance on the representation, and (5) reliance damaged the defendant. *See Stephenson v. Capano Development, Inc.,* Del.Supr., 462 A.2d 1069, 1074 (1983); *Nye Odorless Incinerator Corp. v. Felton,* Del.Super., 162 A. 504, 510–11 (1931). Furthermore, Superior Court Civil Rule 9(b) requires a plaintiff to plead fraud with "particularity." *Nutt v. A.C. & S., Inc.,* Del.Super., 466 A.2d 18, 23 (1983), *aff'd sub nom., Mergenthaler v. Asbestos Corp. of America,* Del.Supr., 480 A.2d 647 (1984).

Browne's complaint completely failed to allege any factual bases to support a claim of fraud. The entire purpose of Rule 9(b) is to put the defendant on notice so that he can adequately prepare a defense. *See Nutt,* 466 A.2d at 23. In cases of fraud the particularity required by Rule 9(b) includes " 'the time, place and contents of the false representations....' " *Id.* (Quoting *Autrey v. Chemtrust Ind. Co.,* 362 F.Supp. 1085, 1092, 1093 (D.Del. 1973)). Browne's complaint totally lacks even a single particular or specific fact to support his fraud claim. Even assuming such a statement was made under the circumstances described, it was a mere ex-

---

6. We do not now decide whether the State can directly sue an appointed contract lawyer for

breach of contract for his failure to adequately represent his client in a judicial proceeding.

pression of opinion, which is not actionable. At most, it was Mr. Robb's subjective judgment as to the value and quality of his own legal abilities. Such opinions, when stated, are classic examples of matters which are of relative degree. With no reflection intended upon Mr. Robb, such expressions generally are recognized to be matters upon which individual judgments may be expected to differ. *See* RESTATEMENT (SECOND) OF TORTS § 538A comment b (1977). In sum, Browne's complaint does not state a cause of action under any "reasonably conceivable set of circumstances."

Accordingly, the judgment of the Superior Court, dismissing the complaint, is AFFIRMED.

### EXHIBIT

In the Supreme Court of the State of Delaware

Herschel W. Vick, Defendant-below, Appellant,

v.

State of Delaware, Appellee.

No. 289, 1984

No. 19, 1985

Court Below: Superior Court of the State of Delaware in and for Sussex County

Cr.A. Nos. 84–03–0163 to 0167

Herschel W. Vick, Plaintiff-below, Appellant,

v.

John Ellingsworth, et al., Defendants-below, Appellees.

No. 76, 1985

Court Below: Superior Court of the State of Delaware in and for Sussex County

No. 85M–FE3

Submitted: November 14, 1985

Decided: December 20, 1985

Before McNEILLY, HORSEY and WALSH, Justices.

### ORDER

This 20th day of December, 1985, upon consideration of the briefs submitted by the parties, including the *pro se* briefs of the appellant, it appears to the Court that:

(1) The appellant, Herschel W. Vick, was convicted for failure to stop at a stop sign, failure to stop at the command of a police officer, resisting arrest, and possession of marijuana with intent to deliver. Vick has filed a direct appeal of these convictions, an appeal from the Superior Court's denial of his post-conviction motion for summary judgment, and an appeal from the Superior Court's summary denial of an application for a writ of mandamus ordering the Department of Corrections to comply with the Superior Court's original judgment, later corrected, which granted Vick 143 days credit on his convictions for time served.

(2) On December 23, 1983, a Millsboro police officer saw Vick pass through a stop sign without stopping. The officer recognized Vick, knew that there was an outstanding warrant for his arrest, and motioned for Vick to stop his car on the side of the road. Vick accelerated, and the police car followed with its four-way flashers on, but without activating its overhead light or siren. As the police car approached Vick's vehicle, Vick drove onto the front lawn of a nearby house and fled from the car, leaving the door on the driver's side open.

(3) The police officer followed Vick, but after losing sight of him called a tow truck and had Vick's car impounded. While waiting for the tow truck to arrive, the officer looked into the car and saw several bullets on the floor on the driver's side and a sandwich on the passenger's seat. The officer determined that the car was owned by Shirley Dutton, and stopped at Ms. Dutton's home on the way to the impoundment lot to inform her that her car would be held until Vick was apprehended, and would be searched.

(4) At the impoundment lot, the officer inspected the passenger compartment of

the vehicle and discovered a brown shoulder bag on the floor in the back seat on the passenger's side. The bag was open, and contained 29 manila envelopes and 8 plastic bags filled with marijuana.

(5) At trial, the officer, who had received training in drug habits, testified that the quantity and packaging of the marijuana indicated that Vick had intended to distribute the drugs. Shirley Dutton testified that she had seen Vick carry marijuana in the shoulder bag which had been seized, but she thought that the marijuana was for Vick's personal use. Vick himself admitted having sold marijuana, but moved to suppress the evidence found in the shoulder bag.

(6) Since Vick received only a ten day sentence for failing to stop at a stop sign, that conviction does not meet this Court's jurisdictional requirements for criminal appeals. *See Del. Const.*, Art. IV, § 11(1)(b); *Marker v. State*, Del.Supr., 450 A.2d 397 (1982). Therefore, there is no basis for overturning the lower court's decision on this charge.

(7) According to Delaware law, a driver is required to stop his vehicle when given any visual or audible signal from a police officer. *See* 21 *Del.C.* § 4103(b). Here, the fact that the officer did not use his siren or overhead light to signal Vick is immaterial, since he motioned for Vick to move to the side of the road and followed Vick with his four-way flashers on.

(8) Contrary to appellant's argument, the offense of refusing to stop a vehicle at the command of a police officer is not the same as the offense of resisting arrest. *Compare* 21 *Del.C.* § 4103 *with* 11 *Del.C.* § 1257. There is no basis for appellant's contention that convictions for violating both of these statutes constitutes unconstitutional multiple convictions and punishment. In this case, the offenses are clearly distinct because Vick was charged with resisting arrest for fleeing from the scene on foot, not because he ignored the officer's signal and refused to stop his car.

(9) The fourth amendment's prohibition of unreasonable search and seizure extends only to property over which an individual has a reasonable expectation of privacy. *See Katz v. United States*, 389 U.S. 377 [347, 88 S.Ct. 507, 19 L.Ed.2d 576] (1967). A warrantless search of abandoned property, even without probable cause, is not prohibited by the fourth amendment. *See Abel v. United States*, 362 U.S. 217 [80 S.Ct. 683, 4 L.Ed.2d 668] (1960); *Hester v. United States*, 265 U.S. 57 [44 S.Ct. 445, 68 L.Ed. 898] (1924). And since the fourth amendment only protects reasonable expectations of privacy, the inquiry concerning abandonment is an objective test of whether the words and acts of a person show relinquishment of privacy, rather than whether the person intended to give up his ownership of the property. *See United States v. Jones*, 707 F.2d 1169 (10th Cir.) *cert. denied* [464 U.S. 859], 104 S.Ct. 184 [78 L.Ed.2d 163] (1983).

(10) In this case, the trial court's finding that Vick relinquished any reasonable expectation of privacy in his shoulder bag when he left it in the car and fled is supported by the record. Without a legitimate expectation of privacy in the car or the shoulder bag at the time it was searched, no further inquiry into the reasonableness of the scope of the warrantless custodial search is required.

(11) The experience and training of the officer who seized the marijuana was sufficient to allow the trial court to rely on his testimony to establish that the drugs were held for delivery, rather than for Vick's personal use. Although quantity and possession of a controlled substance do not, standing alone, necessarily prove intent to sell, the packaging of the drugs and other evidence admitted at trial were sufficient to allow the court to reasonably conclude that Vick possessed the marijuana with an intent to sell it. *See Wilson v. State*, Del. Supr., 343 A.2d 613 (1975) *but see Byrd v. State*, Del.Supr., 458 A.2d 23 (1983).

(12) Vick has not alleged any specific violation of his due process rights, and therefore has not met the burden of establishing beyond mere conjecture that his due process rights have been violated. *See United States v. Valenzuela–Bernal*, 458

U.S. 858 [102 S.Ct. 3440, 73 L.Ed.2d 1193] (1982).

(13) The appellant has also not shown that but for his counsel's errors, the result of his trial would be different. *See Strickland v. Washington*, 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984). Thus, appellant's allegations of ineffective assistance of counsel are without merit.

(14) Finally, since Vick was serving time on sentences imposed by the Court of Common Pleas on other convictions, the Superior Court did not err by refusing to grant Vick credit for time served. There was no error in the Superior Court's refusal to grant Vick's writ of mandamus ordering the Department of Corrections to comply with the Superior Court's original order to grant Vick 143 days credit on his Superior Court convictions for time served.

NOW, THEREFORE, IT IS ORDERED that the judgments of the Superior Court be, and hereby are,

AFFIRMED.

BY THE COURT:

/s/ Joseph T. Walsh
Justice

In the Supreme Court of the State of Delaware

Herschel W. Vick, Plaintiff, Appellant,

v.

Karl Haller, Defendant, Appellee.

No. 149, 1986

Court Below—Superior Court of the State of Delaware, in and for Sussex County:

Civil Action No. 85C–AU–20

Submitted: November 6, 1986

Decided: March 2, 1987

Before CHRISTIE, Chief Justice, HORSEY and MOORE, Justices.

ORDER

This 2nd day of March, 1987, upon consideration of the briefs submitted by the parties, including the *pro se* brief of the appellant, it appears to the Court that:

(1) This civil action stems from a criminal proceeding which led to the conviction of the appellant, Herschel Vick, of various criminal charges in June of 1984. Mr. Vick filed this civil suit in Superior Court on August 14, 1985, seeking monetary damages and equitable relief against Karl Haller, the public defender who represented him in the criminal proceeding, and also against the judge and prosecutor involved in his trial. While this civil suit was pending, Vick's criminal convictions were affirmed on appeal. *Vick v. State*, Del.Supr. [504 A.2d 573], Nos. 289, 1984 and 19 and 76, 1985 Walsh, J. (December 20, 1985) (Order). On April 29, 1986, the Superior Court dismissed this civil case against each defendant ruling that the complaint failed to state a claim on which relief may be granted. Superior Court Civil Rule 12(b)(6). Mr. Vick then brought this appeal.

On August 22, 1986, this Court granted the motion of two appellees, the judge and the prosecutor, to affirm the judgment of Superior Court dismissing the claims against them because it was clear that they were immune from suit under Delaware law by reason of 10 *Del.C.* § 4001 and that under federal law the complaint also failed to state a claim against them. Supr.Ct. Rule 25(a). The question now before the Court is whether the Superior Court erred in granting a motion to dismiss the complaint as it applied to the remaining appellee, Mr. Haller.

(2) For the purpose of judging a motion to dismiss made pursuant to Superior Court Civil Rule 12(b)(6), all well-pleaded allegations must be accepted as true. *Spence v. Funk*, Del.Supr., 396 A.2d 967, 968 (1978). If the plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint, the motion will be denied. *Id.* Official immunity to suit would be a ground on which to grant a motion to dis-

miss, but such motion is not ordinarily granted when an official enjoys only a qualified immunity. 2A *Moore's Federal Practice* para. 12.07 [2.—5] n. 22 (1986) *citing Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

A *pro se* complaint, however inartfully pleaded, may be held to a somewhat less stringent technical standard than formal pleadings drafted by lawyers, and it is dismissed for failure to state a claim only if it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (applying Federal Rule of Civil Procedure 12(b)(6)).

(3) Appellant's allegations against Mr. Haller cover the whole course of the criminal proceeding leading up to and including his trial and conviction. The complaint and the many documents attached thereto allege the following [1]: on February 28, 1984, appellant was charged with failure to stop at a stop sign, failure to stop at the command of a police officer, resisting arrest, and possession of marijuana with intent to deliver. At a preliminary hearing on March 8, 1984, Mr. Haller advised Mr. Vick to accept a plea bargain and also advised him to waive the preliminary hearing in order to obtain a copy of a police report. It is further alleged that when Mr. Vick refused to follow his advice, Mr. Haller became upset with him and suggested that he represent himself.

Mr. Vick then requested a copy of the transcript of the hearing. Mr. Haller told him that he would not order a transcript because of the expense and because he, Mr. Haller, had taken notes at the hearing. Later that day, when Mr. Haller learned that Mr. Vick intended to represent himself, he informed Mr. Vick in a letter that he might be entitled to a transcript.

Mr. Vick then filed *in forma pauperis* a request, which the court forwarded to the public defender's office, for a copy of the transcript. Mr. Haller ordered a portion of the transcript shortly before the trial began on June 12, 1984. Mr. Vick also filed four pretrial motions with the court which were forwarded by the court to Mr. Haller. Mr. Haller did not file them immediately. However, the correspondence attached to the complaint shows that Mr. Haller made repeated attempts to advise Mr. Vick. Simultaneously, Mr. Haller followed the necessary procedures to prepare for trial. Mr. Haller filed one of Mr. Vick's motions, a motion to suppress evidence, shortly before the trial.

Mr. Vick alleges that Mr. Haller misled him as to the date on which the motion to suppress was filed. In a letter to Mr. Vick dated April 30, 1984, Mr. Haller stated that he had filed the motion to suppress with the court. In a later letter to Mr. Vick, Mr. Haller stated that on June 5 he personally served the prosecutor with a copy of the motion to suppress. Mr. Haller also reported that he filed a motion to suppress on appellant's behalf on June 5 in a letter to Judge Albert J. Stiftel.

Mr. Vick alleges that he was unable to have a jury trial because Mr. Haller never requested it; and that Mr. Haller caused one of appellant's witnesses to turn hostile to the appellant.[2] Mr. Vick also claims that Mr. Haller "slept" through a substantial portion of the suppression hearing; that during a recess, he joked with the prosecutor and the police concerning how much time they wanted to give appellant; and that Mr. Haller failed to produce the preliminary hearing transcript at the hearing

1. Apparently admissible evidentiary material attached to the complaint may be deemed to be included in the pleading. *Amtac [Amfac] Mortgage Co. v. Arizona Mall of Tempe, Inc.,* 583 F.2d 426 (9th Cir.1978) (applying Federal Rule 12(b)(6)).

2. Mr. Vick argued on direct appeal of his criminal convictions that his counsel caused a witness to "turn coat," thereby violating his constitutional right to effective assistance of counsel. This Court found the claim to be without merit because Mr. Vick did not show that, but for his counsel's errors, the result of the trial would have been different. *Vick v. State,* Del.Supr. [504 A.2d 573], Nos. 289, 1984 and 19 and 76, 1985, Walsh, J. (December 20, 1985) (Order).

on the motion to suppress to impeach a police officer's testimony.

(4) Appellant's claims are based on theories of deprivation of federal constitutional rights under 42 U.S.C. § 1983 and common law negligence (i.e. malpractice).

(5) To the extent that the appellant attempts to state a federal claim under 42 U.S.C. § 1983, that claim is barred. A state public defender does not act "under color of" state law unless engaged in a conspiracy with state officials to deprive another of federal rights. *Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984). Appellant failed to allege any specific circumstances that indicate that Mr. Haller conspired with State officials to deprive him of due process or other federally-protected rights.

(6) The Superior Court ruled that the negligence claim is barred by Delaware's official immunity statute, 10 *Del.C.* § 4001, which states:

Except as otherwise provided by the Constitutions or laws of the United States or of the State, as the same may expressly require or be interpreted as requiring by a court of competent jurisdiction, no claim or cause of action shall arise, and no judgment, damages, penalties, costs or other money entitlement shall be awarded or assessed against the State or any public officer or employee, including the members of any board, commission or agency of the State, whether elected or appointed, and whether now or previously serving as such, in any civil suit or proceeding at law or in equity, or before any administrative tribunal, where the following elements are present:

(1) The act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations, the granting or withholding of publicly created or regulated entitlement or privilege or any other official duty involving the exercise of discretion on the part of the public officer, employee or member, or

anyone over whom the public officer, employee or member shall have supervisory authority;

(2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

(3) The act or omission complained of was done without gross or wanton negligence;

provided that the immunity of judges, the Attorney General and Deputy Attorneys General, and members of the General Assembly shall, as to all civil claims or causes of action founded upon an act or omission arising out of the performance of an official duty, be absolute; provided further that in any civil action or proceeding against the State or a public officer, employee or member of the State, the plaintiff shall have the burden of proving the absence of 1 or more of the elements of immunity as set forth in this section.

The court ruled that Haller, as a public employee engaged in duties involving the exercise of discretion, was immune from suit because Mr. Vick had failed to allege specific circumstances to negate the existence of any of the three numbered criteria set forth above.

(7) Appellee Haller contends that, for public policy reasons, this Court should judicially create an absolute immunity for public defenders. Where, as here, the General Assembly has clearly defined the class of officials given absolute immunity while acting in their official capacity, this Court is not free to engraft upon the statute an additional class of persons entitled to absolute immunity. *See Giuricich v. Emtrol Corp.,* Del.Supr., 449 A.2d 232 (1982). Appellee's policy concerns may be well-founded; however, it is for the General Assembly to determine whether the scope of § 4001 should be expanded.

(8) We affirm the ruling of the Superior Court that the qualified immunity set forth in § 4001 applies to public defenders. Public defenders, as State employees, enjoy immunity for discretionary decisions taken in pursuance of their official duties, provid-

ed that they meet the three criteria set forth in § 4001. *See [Tower v. Glover], Glover v. Tower*, 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984) (discussing support in common law for the conclusion that public defenders are entitled to qualified immunity); *contra, Reese v. Danforth*, Pa. Supr. [486 Pa. 479], 406 A.2d 735 (1979).

(9) Thus, Mr. Haller, as an assistant public defender and an employee of the State, is immune from suit if his acts or omissions fall within the three criteria listed in § 4001. In the context of a motion to dismiss, § 4001 requires that the plaintiff allege specific circumstances that would support a finding of the absence of one or more of the three statutory criteria for immunity. Appellant must allege facts or circumstances which, if proven, could support the conclusion that Mr. Haller's representation of him: (1) did not arise out of or in connection with an official duty requiring the exercise of discretion; or (2) was not done in good faith and in the belief that the public interest would best be served thereby; or (3) was grossly or wantonly negligent.

(10) Appellant alleges no specific facts to show that Mr. Haller's acts or omissions did not arise out of or in connection with the performance of his duty as a public defender. Nor does the appellant present any allegation to indicate that Mr. Haller's actions did not involve the exercise of discretion. However, Mr. Haller is alleged to have misinformed appellant concerning the date that the motion to suppress was filed, and he is alleged to have done or failed to do other acts which cannot be evaluated in terms of the criteria governing the application of a qualified immunity on the present record.

(11) In view of the extensive evidentiary matter attached to the complaint and the nature of the issues of good faith and gross negligence, the issue of immunity appears to have been inappropriately resolved under the circumstances of this case on a motion to dismiss. That issue might be appropriately resolved in the framework of a ruling on a motion for summary judgment. Superior Court Civil Rule 56. As the record now stands, appellant has presented much evidentiary material as attachements to the complaint, and appellee has presented none. Because the issues were resolved on a motion to dismiss, the trial court had a very incomplete pretrial record before it.

In view of the broad factual record which the appellant had been allowed to make, we rule that the trial court should have regarded the motion to dismiss as a motion for summary judgment and given the appellee an opportunity to enlarge the record before it acted on any motion seeking to resolve the immunity issue as it applied to the public defender.[3] The ruling of the Superior Court is reversed as having been rendered erroneously on a motion to dismiss which under the circumstances should have been treated as a motion for summary judgment. The case will be remanded for further proceedings consistent with the order.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED in part and REVERSED in part on procedural grounds, and the case is

---

**3.** *Cf.* Superior Court Civil Rule 12(b) which states:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reason-

able opportunity to present all material made pertinent to such a motion by Rule 56.

Of course, this provision deals with situations in which a motion to dismiss contains additional documentation; in this case, it is the complaint itself to which additional material has been attached. Nevertheless, in the circumstances explained above, treatment as a Rule 56 motion would be appropriate.

remanded to the Superior Court for further proceedings consistent herewith.

BY THE COURT:

/s/ Andrew D. Christie
Chief Justice