# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CONTINENTAL FINANCE
COMPANY, LLC,

     Plaintiff,

     v.

TD BANK, N.A.,

     Defendant.

C.A. No. N17C-07-002 MMJ CCLD

Submitted: November 14, 2018
Decided: December 10, 2018

**Upon Defendant's Motion to Dismiss Amended Complaint
GRANTED.**

## OPINION

Jamie L. Edmonson, Esq., Daniel A. O'Brien, Esq., Jessie F. Beeber, Esq., Patrick J. Boyle, Esq. (Argued), Adam G. Possidente, Esq., Venable LLP, Attorneys for Plaintiff Continental Finance Company, LLC

Alexander D. Bono, Esq., Ryan E. Borneman, Esq. (Argued), Lynne E. Evans, Esq., Oderah C. Nwaeze, Esq., Mackenzie M. Wrobel, Esq., Duane Morris LLP, Attorneys for Defendant TD Bank, N.A.

**JOHNSTON, J.**

## FACTUAL AND PROCEDURAL CONTEXT

This case arises out of Roberta Czap's conduct in her role as Vice President of Accounting at Continental Finance Company ("Continental"). Czap embezzled

money from Continental. Czap repeatedly diverted money from Continental's business account, held with Defendant TD Bank. Czap utilized automated clearing house ("ACH") services to place the funds in her personal bank account, also with TD Bank. Czap plead guilty in federal court. Continental brought this action against TD Bank, seeking damages for TD Bank's alleged failure to detect the embezzlement scheme.

Continental and TD Bank had entered into a Cash Management Master Agreement ("Master Agreement") in 2011. The Master Agreement established certain security procedures. An "additional security feature" allowed one Authorized User to "create, edit, cancel, delete and restore ACH batches or wire transfer orders under his/her unique User ID, password and Token." Czap was the Authorized User and followed this security procedure by using a User ID, password, and Token.

The Master Agreement states: that the "Customer agrees that all security procedures described in this Agreement and applicable Appendix are commercially reasonable…"; that the "Customer agrees that it shall be solely responsible for ensuring compliance with any security procedures established by Bank…"; and that "Bank shall have no liability for any losses sustained by Customer as a result of a breach of security procedures if Bank has substantially complied with the security procedures."

2

The Master Agreement excludes TD Bank's liability for simple negligence, but contemplates the possibility of TD Bank's liability for "gross negligence, willful misconduct, or bad faith."

TD Bank argues that Continental has not shown that TD Bank owed any duty separate from those created by the parties' agreements and that the duties are expressly and unambiguously established in those agreements. The agreements place the burden on Continental for preventing, monitoring, investigating, and reporting any fraudulent conduct. TD Bank contends that Continental owed: a duty to maintain procedures to safeguard against unauthorized transactions and to ensure that all ACH transactions incorporated dual control; a duty to monitor account activity; and a duty to be solely responsible for unauthorized ACH transactions.

By Opinion dated January 24, 2018,[1] the Court dismissed Continental's Complaint without prejudice. The Court held that Continental's simple negligence claims were barred by the clear and unambiguous language of the agreements governing the parties' relationship and were preempted by the UCC.[2] The Court also held that any negligence claims arising prior to 2011 are not barred by

---

[1] 2018 WL 565305 (Del. Super.).
[2] *Id.* at *3.

3

contract, but are displaced by 6 *Del. C.* §§ 4A-201–203.[3]  Claims grounded in gross negligence, willful misconduct, or bad faith supported by particularized factual allegations are not contractually excluded, but must be asserted pursuant to any relevant UCC provisions.[4]

Continental filed an amended complaint on April 30, 2018.  In addition to the original negligence claim, Continental alleges:

> II. Gross negligence against TD Bank – failure to monitor ACH transactions.
>
> III. Gross negligence against TD Bank – failure to provide adequate account statements.
>
> IV. Gross negligence against TD Bank – failure to monitor the Continental account.
>
> V. Gross negligence against TD Bank – failure to monitor the Czap account.
>
> VI. Breach of the U.C.C. against TD Bank – failure to employ commercially reasonable security procedures.

TD Bank filed its Motion to Dismiss.  Oral argument was heard on November 14, 2018.

---

[3] *Id.*
[4] *Id.*

## MOTION TO DISMISS STANDARD

In a Rule 12(b)(6) motion to dismiss, the Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[5] The Court must accept as true all well-pleaded allegations.[6] Every reasonable factual inference will be drawn in the non-moving party's favor.[7] If the claimant may recover under that standard of review, the Court must deny the motion to dismiss.[8]

## ANALYSIS

In Continental's opposition to TD Bank's Motion to Dismiss, Continental argues that the relationship among Continental, Czap, and TD Bank presents a "unique situation" not covered by the UCC.[9] However, in addition to there being no UCC provision to govern the "unique situation," Continental has not identified case law that would support this proposition. Continental argues that TD Bank breached its duty of care, but fails to identify any specific duties assumed by contract beyond those established by the UCC. Though Continental asserts that the contracts "varied" and added to UCC duties, Continental has not provided any

---

[5] *Spence v. Funk*, 396 A.2d 967, 968 (Del.1978).
[6] *Id.*
[7] *Wilmington Sav. Fund. Soc'v, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super.) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del.2005)).
[8] *Spence*, 396 A.2d at 968.
[9] Ans. Br. at 23.

specific support for this bare assertion. Though Continental provided an example of an allegedly inadequate bank statement issued by TD Bank,[10] Continental did not specifically identify any relevant UCC provision that TD Bank violated by allegedly failing to provide an adequate bank statement.

Article 4A of the UCC governs ACH transfers. The duties Continental alleges are expressly covered by the UCC. The UCC displaces the common law claims.[11] As decided in the January 24, 2018 Opinion, Continental's claim must be dismissed because Continental has not supported the proposition that the agreements between Continental and TD Bank add to, vary, or otherwise supplement the duties provided expressly in the UCC.[12] Further, the account statements that TD Bank provided are sufficient under Section 406 of Article 4 because the statements contain a description, item, and date of payment.[13]

---

[10] Ans. Br. at 14.

[11] 6 Del. C. §§ 1-103(b), cmt. 2 ("The Uniform Commercial Code was drafted against the backdrop of existing bodies of law, including the common law and equity, and relies on those bodies of law to supplement it provisions in many important ways. At the same time, the Uniform Commercial Code is the primary source of commercial law rules in areas that it governs, and its rules represent choices made by its drafters and the enacting legislatures about the appropriate policies to be furthered in the transactions it covers. Therefore, while principles of common law and equity may supplement provisions of the Uniform Commercial Code, they may not be used to supplant its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.").

[12] 2018 WL 565305 (Del. Super.).

[13] 6 Del.C. § 4-406(a).

6

Continental argues that this suit arises from TD Bank's failure to act reasonably considering TD Bank's knowledge of the relationship among Continental, Czap, and TD Bank. Specifically, Continental asserts that the relationship presented a "unique situation" and thus imposed on TD Bank a duty to investigate and report suspicious transactions. However, in the absence of a fiduciary relationship, contractual duty, or "special relationship" as defined by common law,[14] no duty arises from the relationship among Continental, TD Bank, and Czap.[15] In this case, the UCC governs and establishes the duties owed by TD Bank to Continental.

Continental contends that the UCC should not displace the negligence claim against TD Bank. Continental offers case law to support its argument that common law claims may supplement the UCC.[16] Plaintiff also proffers *Gilson v. TD Bank*[17] to persuade the Court to reject Defendant's argument that Article 4A preempts Plaintiff's negligence claim. The Court finds *Gilson* distinguishable from this case in two important ways. First, in *Gilson*, the misconduct was committed by a person who did not have authority to open and access the accounts.

---

[14] *See* Restatement (Second) of Torts § 314A (listing common carriers, innkeepers, possessors of land subject to public use, and those required by law to take or who voluntarily take the custody of another as special relationships requiring a heightened duty to act).

[15] *United Jersey Bank v. Kensey*, 704 A.2d 38, 44-45 (N.J. Super. Ct. App. Div. 1997); *See also Mengele v. Christiana Federal Savings & Loan Association of Wilmington*, 287 A.2d 395, 397-98 (Del. 1972).

[16] *See Travelers Cas. & Sur. Co. of Am. v. Bancorp Bank*, 691 F. Supp. 2d 531 (D. Del. 2009).

[17] 2011 WL 294447 (S.D. Fla.).

The court in *Gilson* found that had the bank followed its security procedures, "the Bank would have known that Stein was *not authorized* to open the subject bank accounts, much less wire transfer money in and out of them"[18] (emphasis added). In contrast, Czap was an Authorized User within the definition of the Master Agreement and, as such, committed her theft within the security procedures set forth in the Master Agreement.

Second, the plaintiffs in *Gilson* alleged that defendants were negligent in opening the account. The *Gilson* court found that the plaintiffs' negligence claim was not preempted by the UCC because the plaintiffs' negligence claim centered around the defendant's negligent conduct with regard to opening the accounts. Plaintiffs have not made this allegation here.

Continental's claims are grounded in gross negligence. Continental essentially argues that there was so much stolen from Continental that TD Bank must have failed in its duties as a result of gross negligence. Gross negligence signifies "more than ordinary inadvertence or inattention."[19] It is a "higher level of negligence representing 'an extreme departure from the ordinary standard of care.'"[20] The Delaware Supreme Court has compared gross negligence with

---

[18] *Id.* at *9.
[19] *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 530 (Del. 1987).
[20] *Morales v. Family Foundations Academy, Inc. School*, 2013 WL 3337798, at *2 (Del. Super.)(citing *Browne v. Robb*, 583 A.2d 949, 953 (Del. 1990), quoting W. Prosser, Handbook of the Law of Torts 150 (2d ed. 1955)).

criminal negligence as defined in 11 *Del. C.* § 231(a).[21] Gross negligence exists when a "person fails to perceive a risk…of such a nature and degree that failure to perceive it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[22] Simply put, gross negligence is a higher degree of simple negligence.

Continental concedes that the factual underpinning of the Amended Complaint is not different from the original Complaint. The Court previously has held that the claims for simple negligence are barred by the clear and unambiguous language of the agreements between the parties.[23] A finding of gross negligence would require facts amounting to more than simple negligence. Therefore, without any additional facts, the Court cannot find that Continental has established a *prima facie* case that TD Bank violated its duties as a result of gross negligence.

---

[21] *Id.* at *2 (citing *Jardel Co., Inc.*).
[22] *Id.* (citing 11 *Del. C.* § 231(a)).
[23] 2018 WL 565305 (Del. Super.).

9

## CONCLUSION

The Court finds that the Amended Complaint repackages simple negligence claims as gross negligence without additional or qualitatively different factual allegations. The Court previously held that the simple negligence claims are barred by the parties' contracts, and gross negligence claims must be asserted pursuant to relevant UCC provisions.

The Court finds that Plaintiff has failed to assert claims establishing a *prima facie* case of gross negligence. Article 4A of the UCC governs ACH transactions and displaces the common law claims alleged in this matter. Further, the UCC one-year statute of repose applies.[24]

Therefore, Defendant TD Bank's Motion to Dismiss Amended Complaint is hereby **GRANTED**.

**IT IS SO ORDERED.**

The Honorable Mary M. Johnston

---

[24] 6 *Del. C.* § 4A-505.