IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| VALLEY JOIST BD HOLDINGS, LLC, a Delaware limited liability company, | § § § § | No. 105, 2021 |
| Plaintiff Below, Appellant, | § § § § | Court Below – Superior Court of the State of Delaware |
| v. | § § | C.A. No. N20C-07-072 |
| EBSCO INDUSTRIES, INC., | § § | |
| Defendant Below, Appellee. | § § | |

Submitted: October 13, 2021
Decided:   December 20, 2021

Before **VAUGHN**, **TRAYNOR** and **MONTGOMERY-REEVES**, Justices.

Upon appeal from the Superior Court.  **REVERSED and REMANDED.**

Joseph B. Cicero, Esquire, Aidan T. Hamilton, Esquire, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware; Jeffrey H. Zaiger, Esquire, Judd Lindenfeld, Esquire, ZAIGER LLC, Stamford, Connecticut; *for Appellant Valley Joist BD Holdings, LLC.*

John P. DiTomo, Esquire, Sara Toscano, Esquire, MORRIS, NICHOLS, ARSHT, & TUNNELL LLP, Wilmington, Delaware; *for Appellee EBSCO Industries, Inc.*

**MONTGOMERY-REEVES**, Justice:

This appeal arises from a dispute over a Stock Purchase Agreement ("SPA") formed between Valley Joist BD Holdings, LLC ("VJ Holdings") and EBSCO, Industries Inc. ("EBSCO"). In December 2017, EBSCO sold all of its stock in Valley Joist, Inc. to VJ Holdings. After closing, VJ Holdings discovered structural defects in one of the buildings acquired as part of the transaction. In July 2018, VJ Holdings sought indemnification from EBSCO through the procedure outlined in the SPA. Two years after receiving no response to the notice, VJ Holdings filed suit in the Superior Court for breach of contract and fraud in the inducement.

The Superior Court granted EBSCO's motion to dismiss the fraud claim for failure to plead sufficient facts to satisfy Superior Court Civil Rule 9(b). The court also dismissed the breach of contract claim as barred under the SPA's one-year contractual statute of limitations. VJ Holdings filed a timely appeal raising two issues, both relating to the dismissed fraud claim: *first*, whether VJ Holdings pled sufficient facts to show pre-closing knowledge of fraud; and *second*, whether the Superior Court properly relied on a bootstrapping doctrine to dismiss the fraud claim.

For the reasons provided below, the Superior Court's March 10, 2021 order granting a motion to dismiss is REVERSED and REMANDED for proceedings consistent with this opinion. The allegations in the complaint, when viewed in the light most favorable to the non-moving party, lead to a reasonable inference that EBSCO knew of the structural defects

in the building at the time of closing the SPA, contrary to its representation in the SPA that the building was in good operating condition and repair. As for the bootstrapping argument, a review of the Superior Court's opinion reveals that the court did not rely on a bootstrapping doctrine to dismiss the fraud claim.

## I.    BACKGROUND

### A.    The Parties

Appellant VJ Holdings is a Delaware limited liability company that served as an acquisition vehicle for the private equity firm, Black Diamond Capital Management, LLC.[1] Appellee EBSCO is a Delaware corporation with its principal place of business located in Birmingham, Alabama.[2]

Valley Joist, Inc. is the entity VJ Holdings acquired through the SPA. After the purchase, Valley Joist Inc., was converted to a Delaware limited liability company and re-named Valley Joist, L.L.C. ("Valley Joist").[3] Valley Joist custom builds steel joist and deck product systems that are critical components of roofing and flooring systems.[4] Valley Joist owns and operates two facilities for the design and manufacture of its joist and deck products known as Valley Joist West, located in Fernley, Nevada, and Valley Joist East, located in Fort Payne, Alabama.[5] At the center of the dispute is Building #14 at the Valley Joist East facility,

---

[1] Answering Br. 7.
[2] App. to Opening Br. A000011 (hereinafter "A_").
[3] A000011-12.
[4] A000012.
[5] *Id.*

which serves as a large manufacturing building. Building #14 has three crane bays, and each crane bay has one overhead crane.[6]

## B.     Execution of the Stock Purchase Agreement

On December 29, 2017, VJ Holdings and EBSCO entered into the SPA. VJ Holdings purchased Valley Joist, Inc. from EBSCO for $20 million.[7] Section 3.4(a) of the SPA states that EBSCO represents and warrants that "the Assets of [Valley Joist] (including the Real Property and buildings, fixtures, mechanical and other systems and improvements thereon) are in good operating condition and repair, ordinary wear and tear excluded, and except for any ordinary, routine maintenance and repair required that in sum are consistent with past practices."[8] VJ Holdings represented and warranted that it was "provided adequate access to the personnel, premises, and properties, Assets, books and records, and other documents and data of the Company" and that it did not conduct any formal inspections of the structural integrity of any Valley Joist buildings.[9]

## C.     Problems with the Cranes at Building #14

In early 2018, Valley Joist began experiencing problems with the overhead cranes in Building #14 at Valley Joist East. The cranes would become misaligned and frequently needed to be shut down for repair. This caused production to decline and resulted in

---

[6] A000013.
[7] *Id.*; A000068 at §2.2(a).
[8] A000076.
[9] A000014; A000091 at §4.7; Opening Br. Ex. A at 3.

incidental costs of $500,000.[10] Valley Joist hired a structural engineer to inspect the building. In a report dated July 20, 2018, the engineer concluded that "Building #14 was not built with the appropriate structural support for the overhead cranes and that the weight of such cranes could not be supported by the structure."[11] After the structural engineer determined that the building was beyond repair to support the weight of the cranes, Valley Joist constructed a new building, which cost approximately $7.5 million.[12]

On July 3, 2018, VJ Holdings sent a notice of direct claim for indemnification to EBSCO through the procedure outlined in Section 6.7 of the SPA.[13] EBSCO did not respond and thus rejected the claim.[14] Two years later, on July 8, 2020, VJ Holdings filed suit in the Superior Court, asserting claims for breach of contract and fraud in the inducement.[15] VJ Holdings sought over $11 million in damages.[16]

### E.    The Superior Court Proceedings and Decision

EBSCO filed a motion to dismiss on October 21, 2020, arguing, among other things, that VJ Holdings failed to adequately plead that EBSCO possessed the requisite knowledge to state a fraud claim.[17] EBSCO acknowledged that the complaint included four allegations

---

[10] A000016.
[11] A000017.
[12] A000019.
[13] *Id.*
[14] A000020; *see also* Opening Br. Ex. A at 5.
[15] *Id.*; A000021-25.
[16] A000024; *see also* Opening Br. Ex. A at 17.
[17] Opening Br. Ex. A at 5,17.

of pre-closing knowledge: (1) a May 2017 capital expenses spreadsheet detailing $550,000 allocated for roof repairs ($450,000) and crane beams ($100,000);[18] (2) a September 20, 2017 email from a Valley Joist employee to an EBSCO employee stating that one crane will not move in a southern direction;[19] (3) a November 8, 2018 email of a Valley Joist employee sending EBSCO employees a list of scheduled capital expenditures that EBSCO had disclosed to Valley Joist;[20] and (4) a transition employee's (Josh Brasher)[21] statements to a senior Valley Joist employee (Keith Juedemann) that EBSCO knew of structural problems with Building #14's cranes months prior to the sale.[22]   The complaint also alleges that in April or May 2018, Brasher showed Juedemann repair quotes EBSCO received before closing, which indicated "it would cost $3 to $4 million to repair the defective condition of Building #14."[23]

EBSCO argued that the first three allegations were vague and unrelated to the actual structural issue.  EBSCO argued that the statements from the transition employee were insufficient because the quote mentioned in the complaint referred to a quote that Valley Joist received after closing.  EBSCO attached to their motion to dismiss a repair quote dated

---

[18] A000018.
[19] *Id.*
[20] *Id.*
[21] The employee was identified in the SPA and these proceedings as Josh Brasher.  A000128; A000219 at 9:21-22.
[22] A000017.
[23] A000017-18.

March 16, 2018 (almost three months after closing) from Garrison Steel Erectors, Inc. addressed to Jonathan Dooley of Valley Joist.[24]

The court concluded that the complaint did not meet the heightened pleading requirements of Superior Court Civil Rule 9(b) and dismissed the fraud claim for failing to plead "EBSCO's pre-closing knowledge with particularity."[25] The court dismissed the contract claim because it was filed beyond the one-year statute of limitations negotiated in the SPA.[26] The court observed that VJ Holdings appeared to attempt to circumvent the shortened statute of limitations period by rebranding its contract claim as a fraud claim, but the court did not rely on the bootstrapping doctrine to dismiss the fraud claim.[27] VJ Holdings filed a timely appeal challenging the Superior Court's decision to dismiss the fraud claim.

## II.    STANDARD OF REVIEW

This Court reviews questions of law and contractual interpretation *de novo*.[28] The decision to grant a motion to dismiss under Superior Court Rule 12(b)(6) is reviewed *de novo*.[29] The complaint is viewed "in the light most favorable to the non-moving party," and

---

[24] A000138-41.

[25] Opening Br. Ex. A at 17.

[26] *Id.* Appellants do not appeal the dismissal of the contract claim.

[27] A000221 at 11: 2-13; Opening Br. Ex. A at 16.

[28] *CompoSecure, L.L.C. v. CardUX, LLC*, 206 A.3d 807, 816 (Del. 2018) (quoting *Gatz Props., LLC v. Auriga Capital Corp.*, 59 A.3d 1206, 1212 (Del. 2012)).

[29] *See Clinton v. Enterprise Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).

all well-pled allegations and the reasonable inferences flowing from those allegations are accepted as true.[30]

## III.   ANALYSIS

On appeal, VJ Holdings contends that the Superior Court erred in granting EBSCO's motion to dismiss the fraud in the inducement claim.[31]  VJ Holdings raises two arguments: (1) the Superior Court erred by holding that the complaint failed to plead EBSCO's pre-closing knowledge sufficient to satisfy Superior Court Civil Rule 9(b);[32] and (2) the trial court erred by relying on the "bootstrapping doctrine" to dismiss the fraud claim.[33]

### A.   The Fraud Claim Satisfies Rule 9(b)

To state a claim for fraud, a plaintiff must allege: (1) a false representation made by the defendant; (2) the defendant knew or believed the representation was false or was recklessly indifferent to its truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted or refrained from acting in justifiable reliance on the representation; and (5) damage resulted from such reliance.[34]  The pleading standards for fraud claims are heightened.  Superior Court Civil Rule 9(b) provides that "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity."  The factual circumstances that must be stated with particularity refer to the time, place, and

---

[30] *Id.* at 895.
[31] Reply Br. at 1-2.
[32] *Id.* at 3.
[33] *Id.* at 17.
[34] *Prairie Capital III, L.P. v. Double E Hldg. Corp.*, 132 A.3d 35, 49 (Del. Ch. 2015).

contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation.[35] Rule 9(b) provides that "knowledge and other condition of mind of a person may be averred generally."[36] "Although Rule 9(b) provides that 'knowledge ... may be averred generally,' where pleading a claim of fraud has at its core the charge that the defendant knew something, there must, at least, be sufficient well-pled facts from which it can reasonably be inferred that this 'something' was knowable and that the defendant was in a position to know it."[37]

The Superior Court held that VJ Holdings satisfied several pleading requirements. "VJ Holdings has pleaded that EBSCO made a fraudulent misrepresentation by stating that Valley Joist 'Assets' were in 'good operating condition and repair.'"[38] This alleged misrepresentation "was made in Section 3.4(a) of the SPA," and it "was made on December 29, 2017—the date the SPA closed."[39] Further, "VJ Holdings has alleged that EBSCO made the misrepresentation 'with the specific intent to induce VJ Holdings to act on the purchase of Valley Joist and to refrain from inspecting the condition of the buildings and fixtures at Valley Joist East, including Building #14 and its cranes.'"[40] However, the court held that VJ

---

[35] *Browne v. Robb*, 583 A.2d 949, 955 (Del. 1990); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 144 (Del. Ch. 2004).
[36] Super. Ct. Civ. R. 9(b).
[37] *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 208 (Del. Ch. 2006).
[38] Opening Br. Ex. A at 12.
[39] *Id.*
[40] *Id.* at 13.

Holdings failed to demonstrate facts sufficient to support a reasonable inference that EBSCO knew the representations were false at the time they were made, thus failing to plead "EBSCO's pre-closing knowledge with particularity."[41]

With respect to knowledge, the court reasoned that it could not consider a March 2018 invoice as evidence of pre-closing knowledge of the defects with Building #14 because the invoice was dated after the closing of the SPA and provided no insight into what EBSCO knew at the time of closing.[42] The court held that the remaining assertions were not specific enough to the structural problems.[43] We disagree with the Superior Court's analysis regarding the allegations of pre-closing knowledge.

To plead knowledge for a fraud claim, a plaintiff must allege facts from which the court can reasonably infer that the misrepresentation was "knowable and the defendants were in a position to know it."[44] The complaint alleges that before "the expiration of the term of the Transition Employee's service under the TSA, Valley Joist's new management team was told by the Transition Employee that the problems with the Building #14 cranes were known to EBSCO months prior to its sale of the business."[45] Paragraph 39 of the complaint adds:

---

[41] *Id.* at 16.
[42] *Id.*
[43] *Id.* at 15-16.
[44] *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006); *see also Metro Commc'n Corp. BVI*, 854 A.2d at 144 (Del. Ch. 2004) ("While knowledge may be averred generally, where pleading a claim of fraud that has at its core the charge that the defendant knew something, there must, at least, be sufficient well-pleaded facts from which it can reasonably be inferred that this 'something' was knowable and that the defendant was in a position to know it.").
[45] A000017.

10

In or around April or May 2018, the Transition Employee informed Keith Juedemann (a senior Valley Joist employee) that EBSCO knew about the inadequate structural support for the overhead cranes prior to the sale. The Transition Employee also showed Mr. Juedemann the quotes EBSCO received indicating that it would cost $3 to $4 million to repair the defective condition of Building #14.[46]

Thus, the complaint alleges that before closing EBSCO knew of the structural issues with Building #14, in particular, and EBSCO knew that it would cost millions of dollars to repair Building #14.[47] Valley Joist learned all this information from EBSCO's own transition employee.

The misrepresentation the Superior Court identified in the SPA is that "the Assets (including the Real Property and buildings, fixtures, mechanical and other systems and improvements thereon) were *in good operating condition and repair*, ordinary wear and tear excluded."[48] Statements from the EBSCO employee designated to lead the transition admitting EBSCO's pre-closing knowledge of the structural issues, coupled with EBSCO's pre-closing receipt of quotes to repair structural damage at Building #14 for $3-4 million, allege knowledge sufficient to survive a motion to dismiss.

In determining that these allegations were insufficient, the court appears to have assumed that Paragraph 39 referred to one repair quote and that repair quote was the same

---

[46] A000017-18.
[47] *Id.*
[48] Opening Br. Ex. A at 8; A000076 (emphasis added).

repair quote that Appellee attached to its motion to dismiss.[49] That repair quote was dated three months after the closing and addressed to a Valley Joist employee.

The court erred by relying on this repair quote. First, this repair quote was not attached to the complaint, and the court did not determine that it was incorporated by reference. Further, VJ Holdings argued that this quote was not one of the quotes referred to in Paragraph 39 of the complaint.[50] As such, the court should not have considered the quote to resolve a motion to dismiss.[51] Second, the complaint refers to multiple quotes, not just one; the complaint states that the quotes were provided to EBSCO, not Valley Joist; and the quotes provided a range of $3 to 4 million in repair costs, not just $3 million. Thus, the complaint appears to refer to different quotes, and it is unclear why this quote would undercut the allegations in the complaint.

When the averments are taken as a whole, they satisfy the particularity requirement, allowing the complaint to survive dismissal and the action to proceed to discovery. Specifically, allegations that the EBSCO transition employee, Brasher, told Juedemann that EBSCO knew of the structural damage at Building #14 before closing and

---

[49] *See* Opening Br. Ex. A at 15.

[50] A000246.

[51] "If, on a motion . . . to dismiss for failure of the pleadings to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Super. Ct. Civ. R. 12(b).

received quotes before closing estimating that repairs would cost $3 to 4 million were sufficient to allege knowledge and defeat a motion to dismiss.

**B.    The Trial Court Did Not Dismiss the Fraud Claim Under the Bootstrapping Doctrine.**

VJ Holdings argues that the Superior Court erred by relying on the bootstrapping doctrine to dismiss its fraud claim. VJ Holdings leans heavily on the one sentence in the Superior Court's opinion: "It appears VJ Holdings is attempting to circumvent the negotiated shortened statute of limitations period by re-casting its breach of contract claim as a fraud claim."[52] However, this observation was not the reason the court dismissed the fraud claim. As the court states in the very next sentence, "the [c]ourt finds that VJ Holdings . . . failed to plead EBSCO's pre-closing knowledge with particularity. . . . Therefore, the fraud claim must be dismissed."[53] Thus, the bootstrapping doctrine had no bearing on the court's determination about the vitality of the fraud claim.

## IV.    CONCLUSION

For the reasons provided above, the judgment of the Superior Court is REVERSED and REMANDED for proceedings consistent with this ruling.

---

[52] Opening Br. Ex. A at 16.
[53] *Id.*