# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARK BIEGLER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | C.A. No. N23C-01-180 FWW |
| v. | ) | |
| | ) | |
| UNDERWRITING SERVICE | ) | |
| MANAGEMENT COMPANY, LLC and | ) | |
| UNITED SPECIALITY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: June 27, 2023
Decided: July 10, 2023
*Corrected: July 18, 2023

*Upon the Motion to Dismiss of Defendants Underwriting Service Management
Company, LLC and United Specialty Insurance Company*

**GRANTED**

**MEMORANDUM OPINION AND ORDER**

Raeann Warner, Esquire, JACOBS & CRUMPLAR, P.A., 750 Shipyard Drive, Suite 200, Wilmington, DE 19801, Attorney for Plaintiff Mark Biegler.

Loren R. Barron, Esquire, MARGOLIS EDELSTEIN, 300 Delaware Avenue, Suite 800, Wilmington, DE 19801, Attorney for Defendants Underwriting Service Management Company, LLC and United Specialty Insurance Company.

**WHARTON, J.**

*Footnotes 77 and 79

# I. INTRODUCTION

This case started its life in this Court on August 6, 2021 when Plaintiff Mark Biegler ("Biegler") sued Defendants Underwriting Service Management Company, LLC ("USMC") and United Specialty Insurance Company ("United Specialty") (collectively "Defendants").[1] The Complaint alleged three counts – Negligence (Count I); Negligent Misrepresentation (Count II); and Tortious Interference with Prospective Contractual Relations (Count III).[2] The Defendants moved to dismiss under Superior Court Civil Rule 12(b)(6), arguing that all three counts failed to state claims.[3] Further, the Negligent Misrepresentation claim (Count II) in particular was not within the Superior Court's jurisdiction because it did not allege consumer fraud or a violation of the Consumer Fraud Act.[4] Apparently agreeing, at least as to Count II, Biegler voluntarily dismissed the case in Superior Court.[5] He sought a more congenial home for this action in the Court of Chancery when he took his Complaint to that court.[6] Again, the Defendants moved to dismiss.[7] Their motion argued that all three counts failed to state claims and, in addition, Biegler had an adequate

---

[1] *Biegler v. United Service Management Company, LLC, et al.,* N21C-02-035 MAA.
[2] *Id.* Compl., D.I. 1.
[3] *Id.* Defs.' Mot. to Dismiss, D.I. 10.
[4] *Id.*
[5] *Id.* Pl.'s Not. of Vol. Dismissal, D.I. 11.
[6] *Biegler v. United Service Management Company, LLC, et al.,* 2021-1003-MTZ, D.I. 1.
[7] *Id. Defs.'* Mot. to Dismiss, D.I. 6.

remedy at law for his Negligence (Count I) and Tortious Interference with Prospective Contractual Relations (Count III) claims.[8]  The Court of Chancery agreed with the Defendants, in part, dismissing Biegler's Negligent Misrepresentation claim (Count II) for failure to state a claim, but declining to exercise its clean-up authority to resolve the motion as to Counts I and II, and recognizing Biegler's right to transfer those claims back to the Superior Court pursuant to 10 *Del. C.* § 1902.[9]  Like the prodigal son, Biegler returns home to this Court with his well-traveled Complaint, shorn of its Negligent Misrepresentation claim.[10]  This Court now addresses the Defendants' Motion to Dismiss the remaining two claims.  The Court's decision follows.

## II.    FACTS AND PROCEDURAL HISTORY

The following facts are taken from the Court of Chancery's Order:

> Plaintiff Mark Biegler is a licensed insurance producer and insurance consultant.  In August 2017, nonparty Fleetlogix, Inc. began working with Biegler to find a new primary insurance policy.  Fleetlogix takes possession of returned rental vehicles and prepares them to return to the rental pool, and needs primary insurance to cover any claims while the cars are in its possession.  Biegler assembled a multiperson marketing team to find a policy meeting Flexlogix's needs, and the team spoke with several agencies.  Biegler began working with nonparty

---

[8] *Id.*
[9] *Id.* 2022 WL 17820533, at *4-5 (Del. Ch. Dec. 20, 2022).
[10] N23C-01-180 FWW, D.I. 1. (Unless otherwise noted, all subsequent docket item references are to the current Superior Court action.)

3

Amy Phillips, a broker with GMI Insurance, to find coverage for Fleetlogix.

After several weeks of discussions and negotiations, Phillips presented a policy from defendant United Specialty Insurance Company, underwritten by defendant Underwriting Service Management Company, LLC ("USMC") and together, "Defendants"). Biegler insisted on a few particular items, which Defendants accepted. Phillips gave Biegler a copy of the proposed policy, and Biegler reviewed it with Fleetlogix. Biegler and Fleetlogix's general counsel reviewed the policy to ensure it accurately reflected the negotiated terms. Biegler noticed that the policy was excess, rather than primary. Biegler spoke to Phillips to fix this issue and Phillips confirmed to him the entire policy would be primary.

Fleetlogix chose the coverage Phillips offered. Coverage was bound on April 10, 2018, and the binder contained the negotiated terms. After receiving the policy, Biegler reviewed it again and confirmed the policy offered primary coverage and contained other specifically requested terms.

In May 2018, Fleetlogix submitted a potential claim to Phillips. Phillips informed Biegler that USMC was providing only umbrella coverage and Fleetlogix would need to get coverage through its primary insurer. At this point, Biegler spoke with United Specialty and USMC directly, pressing his view that Fleetlogix required and had been provided primary coverage. USMC conceded the policy, as written, provided primary coverage but asserted that was a mistake, and it had thought it was writing an excess policy. USMC agreed to cover Fleetlogix under the policy as written.

In June, Fleetlogix submitted more claims. On July 3, USMC sent a ten-day cancellation notice, asserting Fleetlogix lacked underlying insurance. Biegler informed

4

USMC the ten-day notice violated the policy's terms. USMC replaced the ten-day notice with a twenty-day notice and then a thirty-day notice of termination and cancelled the policy.

Due to the fact and nature of the cancellation, Fleetlogix terminated its relationship with Biegler and used another agent to secure replacement coverage. Biegler lost the approximately $250,000 in annual commissions he had expected to earn from his work for Fleetlogix.[11]

As noted, Biegler initially sued in the Superior Court and voluntarily dismissed that action without prejudice to pursue the matter in the Court of Chancery. He is now back in the Superior Court after the Court of Chancery dismissed his equitable claim for failure to state a claim and declined to address his claims at law.

### III.    THE PARTIES' CONTENTIONS

The Defendants move under Superior Court Civil Rule 12(b)(6) to dismiss both remaining counts for failure to state a claim.[12] As to Count I, Negligence, the Defendants posit the elements of a claim of professional negligence to be: (1) the

---

[11] The Court adopts the Background section of the Court of Chancery's Letter Order, which drew on the facts alleged in Biegler's Complaint as well as documents attached and integral to it. Internal footnotes are omitted. *Biegler,* 2022 WL 17820533, at *1-2.

[12] The Court of Chancery docket has been docketed in this Court as D.I. 7. The Defendants' Motion to Dismiss, the Biegler's Response, and the Defendants' Reply as filed in the Court of Chancery appear in full as an Appendix to D.I. 8, Biegler's status letter to the Court dated March 27, 2023. References to those pleadings will be to that docket item.

defendant owes the plaintiff a duty of care; (2) the defendant breached that duty; (3) the defendant's breach was the proximate cause of the Plaintiff's injury; and (4) the plaintiff incurred damages.[13] Originally, the Defendants argued that a claim of professional negligence against an insurance broker depends upon whether the broker had a fiduciary duty towards the plaintiff.[14] The Defendants contended that Biegler had failed to allege that USMC, and by extension United Specialty, had any duty, much less a fiduciary duty, towards him.[15] Just prior to the Court holding oral argument on the motion, the Defendants abandoned their contention that Biegler is required to allege that a fiduciary duty existed between him and the Defendants in order to bring a negligence claim.[16] Instead, they rely on their other arguments advanced in their papers.[17]

Regarding Count III, the Tortious Interference with Prospective Contractual Relations claim, the Defendants state that the elements of such a claim are: (1) the existence of a valid business relation or expectancy; (2) the interferer's knowledge of the relationship or expectancy; (3) intentional interference that (4) induces or causes a breach or termination of the relationship or expectancy and that; (5) causes

---

[13] Defs.' Mot. to Dismiss at 7, D.I. 8.
[14] *Id.*
[15] *Id.* at 7-8.
[16] D.I. 11.
[17] *Id.*

6

resulting damages to the party whose relationship or expectancy is disrupted.[18] Here, the Defendants contend that Biegler failed to allege that USMC had knowledge of a business relationship between himself and Fleetlogix beyond one conversation he had with USMC about one policy.[19] Since that conversation occurred after Fleetlogix purchased the policy, it cannot be the basis for intentional interference based on selling the excess coverage policy.[20] The Defendants also argue that Biegler fails to allege that USMC acted improperly in cancelling the policy or that it intentionally interfered with his business relationship with Fleetlogix.[21]

In response to the Defendants argument on Count I, Negligence, Biegler devoted the bulk of his attention to the now abandoned fiduciary duty argument.[22] Regarding ordinary negligence, he submits that the Defendants "provided and binded [sic] coverage on terms they did not understand and were not willing to accept;" that they "terminated coverage midterm on grounds that it [sic] had inadvertently placed primary coverage when it intended to place excess coverage;" that "sending of 10-day and 20-day cancellation notices was in violation of the

---

[18] Defs.' Mot. to Dismiss at 10 (citing *In re Frederick's of Hollywood, Inc. Shareholders Litig.,* 1998 WL 398244 (Del. Ch. July 9, 1998), D.I. 8.
[19] Defs.' Mot. to Dismiss at 10-11, D.I. 8.
[20] *Id.,* at 11.
[21] *Id.* at 11-12.
[22] Pl.'s Resp. to Defs.' Mot to Dismiss at 6-7, D.I. 8.

standard of care and insurance provisions;" and that he "was a foreseeable victim of Defendants' actions."[23]

Regarding Count III, Tortious Interference with Prospective Contractual Relations, Biegler asserts that GM Insurance ("GMI"), as agent of United Specialty, was "well aware of the business relationship between him and Fleetlogix" because Biegler worked with GMI through its broker Amy Phillips ("Phillips") to procure the coverage for Fleetlogix from United Specialty and USMC.[24] Additionally, USMC became aware of Biegler's business relationship with Fleetlogix through its conversations with Biegler.[25] Despite having promised Biegler that it would continue the policy as written, according to Biegler, USMC nonetheless improperly issued 10 and 20-day cancellation notices and cancelled the policy mid-term "in violation of the standard of care in the insurance industry, the conditions of the coverage policy, and contrary to relevant insurance regulations."[26] As a result, Biegler alleges that he lost his business relationship and economic expectancies with Fleetlogix.[27]

In their Reply, the Defendants advanced the argument upon which they now primarily rely - that the Negligence claim cannot survive dismissal because the

---

[23] *Id.* at 9.
[24] *Id.* at 11.
[25] *Id.*
[26] *Id.* at 11-12.
[27] *Id.* at 12.

Defendants agreed to provide, and did provide, the coverage for which Fleetlogix contracted as the contract was written, despite their alleged misunderstanding of the coverage and ineffective 10 and 20-day cancellation notices.[28]  Moreover, the Defendants argue that Biegler does not allege that the 30-day cancellation notice, which ultimately terminated coverage, was improper.[29]  The Defendants contend that coverage was maintained "up until the claims began to accumulate, and, then, it issued the cancellation."[30]  Thus, according to the Defendants, because the Complaint does not allege that "USMC did anything other than fulfill its obligations under the policy and later cancel the policy, the claim is not valid."[31]

The Defendants next contend that the Tortious Interference with Prospective Contractual Relations claim is deficient because it fails to allege that USMC intentionally interfered with or even knew of Biegler's prospective opportunities with Fleetlogix.[32]  The Defendants admit that they knew Biegler was working with Fleetlogix on a garage keepers policy, but the Complaint does not allege that USMC knew about any prospective business between the two, intentionally tried to interfere with such prospective business, or was in competition with Biegler.[33]  The

---

[28] Defs.' Reply in Support of its Mot. to Dismiss at 1-2, D.I. 8.
[29] *Id.* at 2.
[30] *Id.* at 2.
[31] *Id*. at 2-3.
[32] *Id.* at 3.
[33] *Id.* at 3-4.

Defendants maintain that they were simply acting in their own best interests without regard to any prospective business relationship between Biegler and Fleetlogix.[34]

## IV. STANDARD AND SCOPE OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Superior Court Rule 12(b)(6) will not be granted if the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[35] The Court's review is limited to the well-pled allegations in the complaint.[36] In ruling on a 12(b)(6) motion, the Court "must draw all reasonable factual inferences in favor of the party opposing the motion."[37] Dismissal is warranted "only if it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle him to relief."[38] However, the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[39] The Court may, "despite allegations to the contrary," dismiss a complaint "where the unambiguous language of documents upon which the claims are based contradict the complaint's allegations."[40]

---

[34] *Id.* at 4-5.
[35] *Browne v. Robb*, 583 A.2d 949, 950 (Del. 1990).
[36] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).
[37] *Id.*
[38] *Id.*
[39] *Ramunno v. Cawley,* 705 A.2d 1029, 10345 (Del. 1998).
[40] *Tigani v. C.I.P. Assocs., LLC,* 2020 WL 2037241, at v*2 (Del. Apr. 27, 2020) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1083 Del. 2001).

10

## V.    DISCUSSION

### A. Count I – Negligence

Count I, Negligence, alleges that the Defendants failed to exercise reasonable care by being unaware of the nature of the coverage they bound, by binding coverage on terms they were not willing to accept, and by terminating coverage as a result.[41]  As a result of the negligence of Defendants, Biegler claims he suffered significant economic loss, including loss of commission income, as well as damages from suffering severe emotional distress.[42]  The Defendants present a two-pronged attack.  First they argue they owed no duty to Biegler.  Second, they argue that the Complaint fails to allege that they did anything other than provide the coverage for which the parties contracted until they properly terminated the policy.

The Court reprises the relevant history related in the Complaint in search of facts: (1) identifying a duty that the Defendants owed to Biegler; and (2) supporting the allegations that the Defendants' coverage termination was improper.  The Complaint identifies Biegler an "insurance producer duly licensed and authorized to do business in Montana."[43]  Fleetlogix is a business that takes possession of returned rental vehicles from car rental companies and prepares them to return to

---

[41] Compl. at ⁋ 24, D.I. 1.
[42] *Id.* at ⁋ 25.
[43] *Id.* at ⁋ 1.

11

those companies' rental pools.[44]  In August 2016, Fleetlogix asked Biegler to work for it as an insurance consultant to find replacement primary liability and physical damage insurance coverage for rental vehicles temporarily in its custody.[45]  To that end, Biegler assembled a marketing team and began speaking with various carriers.[46]  Eventually, he began working almost exclusively with Phillips of GMI.[47]

In the last week of March 2018, Biegler received a sample copy of a policy from GMI[48]  He reviewed it with Fleetlogix's general counsel and they determined that "[T]he policy met all the requirements Biegler had requested on behalf of Fleetlogix."[49]  The only glitch was that the garage keepers coverage was listed as excess coverage rather than primary coverage.[50]  After Biegler reiterated to Phillips that Fleetlogix required that all of its contracts required that all parts of the coverage be primary, Phillips confirmed that the garage keepers coverage would be changed to primary.[51]

On or about April 10, 2018, Biegler received the coverage binder.[52]  Shortly after that, Biegler received the policies themselves and reviewed them for

---

[44] *Id.* at ⁋ 6.
[45] *Id.*
[46] *Id.* ⁋ 8.
[47] *Id.*
[48] *Id.* at ⁋ 10.
[49] *Id.*
[50] *Id.* at ⁋ 11.
[51] *Id.*
[52] *Id.* at ⁋ 12.

accuracy.[53]  He confirmed that all parts of the policy were primary and that Fleetlogix's other requirements were met.[54]

In May 2018, Fleetlogix had a potential bodily injury claim.[55]  Fleetlogix submitted the claim to USMC through Phillips.[56]  Biegler learned from Phillips that USMC took the position that Fleetlogix would need to turn the claim into its primary carrier because USMC provided only umbrella coverage.[57]  Ultimately, Biegler spoke to Ed Murphy ("Murphy"), the owner of USMC, and his attorney and explained to them that USMC's policy provided primary coverage.[58]  Murphy said that he thought he was writing an excess policy and that he had been misled by Phillips who told him that Fleetlogix had other coverage.[59]  Nonetheless, Murphy agreed to continue coverage of Fleetlogix under the policy as written.[60]

In June 2018, Fleetlogix reported an unspecified number of additional claims to USMC.[61]  In early July 2018, USMC sent Fleetlogix a 10-day notice of cancellation, incorrectly stating that Fleetlogix did not have the required amount of

---

[53] *Id.* at ¶ 13.
[54] *Id.*
[55] *Id.* at ¶ 14.
[56] *Id.*
[57] *Id.*
[58] *Id.* at ¶ 16.
[59] *Id.*
[60] *Id.*
[61] *Id.* at ¶ 17.

13

underlying insurance as stated in the quote.[62]  Biegler notified USMC that the notice violated policy conditions and was unlawful.[63]  USMC replaced the 10-day notice with a 20-day notice, which in turn was replaced with a 30-day notice of termination.[64]  As a result of these notices, the termination mid-term and the purported reason for the termination, the Complaint alleges that Fleetlogix lost confidence in Biegler and ended its relationship with him.[65]  The Complaint states, "The 10 and 20-day notices were contrary to the policy's condition page."[66]  At this point, the Complaint does not allege that the 30-day notice of cancellation was contrary to the policy's condition page.[67]  But, it does allege in the paragraph following this allegation that "The short-term notices of cancellation and mid-term cancellation where there was no material change in the risk to be covered were contrary to the conditions of coverage, relevant insurance code provisions, and the standard of care in the insurance industry.[68]

Biegler identifies as his economic injuries from his loss of the Fleetlogix account: (1) "$65,000 per year (after $45,000 in year one) in direct GL/HNO commissions;" (2) "another $30,000 annually for additional lines Fleetlogix had

---

[62] *Id.*
[63] *Id.* at ¶ 18.
[64] *Id.*
[65] *Id.*
[66] *Id.*
[67] *Id.*
[68] *Id.* at ¶ 19.

already asked Biegler to secure for them;" and (3) "another $150,000 or more annually in additional business for Biegler based on the likelihood that Biegler would become the agent for Fleetlogix's workers' compensation plan."[69]  It appears that only the commissions identified in the first item are directly related to the policy with USMC.  The other claimed injures relate to prospective income from lines of insurance not yet secured and Biegler's anticipated role as agent for Fleetlogix workers' compensation plan.

The gaps in the record the parties have chosen to present to the Court have made the Court's task more difficult than necessary.  Biegler attached a number of exhibits to his original Complaint in this Court.  Those exhibits were the Insurance Binder (Exhibit 1), an endorsement modifying the Commercial General Liability Coverage Part (Exhibit 2), a Primary and Noncontributory endorsement (Exhibit 3), a General Liability Declarations page (Exhibit 4), a Self-Insured Retention Endorsement  (Exhibit 5), the 10-day Notice of Cancellation (Exhibit 6), the General Liability/Hired & Non-Owned Quote (Exhibit 7), and Fleetlogix's Excess Liability Insurance Policy Declarations page from Sandstone (Exhibit 8).[70]  Those same exhibits were attached the Complaint in the Court of Chancery.[71]  Biegler did not attach any exhibits to the Complaint when he filed it again in this Court, but the

---

[69] *Id.* at ⁋ 21.
[70] Compl., Exs. 1-8, D.I. 1 (N21C-08-035 MAA).
[71] Compl., Exs. 1-8, D. I. 1 (C.A. No. 2021-1003-MTZ).

exhibits became part of the record when the Court of Chancery's record was filed here.[72]

Yet, whether by design or inadvertence, there are notable omissions from the exhibits. For example, despite alleging in Paragraph 18 that the 10 and 20-day notices (but not the 30-day notice) were contrary to the policy's condition page, and in Paragraph 19 that "the short term notices of cancellation and the mid-term cancellation where there was no material change in the risk to be covered were contrary to the conditions of coverage," the policy's condition page was not included as an exhibit.[73] While the 10-day notice of cancellation stating the reason for the termination was attached, the 20-day notice, and, more importantly, the operative 30-day notice were not.[74] Further, while the Complaint alleges that

---

[72] D.I. 8.

[73] It appears the policy was made available to the United States District Court in related litigation in Montana, and may have contained a clause allowing USMC to terminate it upon 30-day notice. *Biegler v. G.M.I. Inc. N.A., et al.,* 2020 WL 7209151, at *5 (D. Mont. Dec. 7, 2020). That court granted GMI's motion to dismiss for failure to state a claim for "the simple reason that GMI provided Fleetlogix with the primary coverage Biegler requested." *Id.* It is unclear whether Biegler challenged USMC's right to terminate the policy. Certainly, there is no mention of any such challenge in the opinion. The counts against USMC and United Specialty in that case were dismissed on personal jurisdiction grounds. *Biegler v. G.M.I., N.A., Inc., et al.,* 2020 WL 6940382 (D. Mont. Nov. 25, 2020).

[74] The defendants contend that they terminated the policy "when claims began to accumulate." Defs.' Reply in Support of Its Mot. to Dismiss at 2, D.I. 8. Whether this rationale was expressed at the time of termination in the 30-day notice or only later in litigation is unknown due to the absence of the 30-day notice from the record.

16

"relevant insurance code provisions" were violated, it does not identify those provisions.[75]

In their Reply, the Defendants contend that the negligence claim is defective because the Complaint failed to allege that USMC did anything other than fulfill its obligations under the policy, and later lawfully cancel the policy by the 30-day notice after claims began to accumulate.[76] The Defendants do not cite to the Complaint or any documents integral to the Complaint for these assertions, nor do they provide the Court with the policy conditions or 30-day termination notice. They do cite to *Biegler v. G.M.I. N.A. Inc.,*[77] a copy of which they attach to their Reply.[78] Biegler unsuccessfully brought an action against GMI in Montana. But, the decision of the 9th Circuit in *Biegler v. G.M.I. N. A. Inc.* bears the notation that it is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.[79] That Rule provides that unpublished dispositions and orders of the Ninth Circuit Court of Appeals are not binding precedent, except when relevant under the doctrines of law of the case, *res judicata,* and collateral

---

[75] Compl. at ¶ 19, D.I. 1.

[76] *Id*. at 1-2.

[77] *Biegler v. G.M.I. N.A. Inc.,* 2022 WL 401492, (9th Cir. Feb. 9, 2022). (affirming dismissal of Biegler's claims).

[78] Defs. Reply at 3-5, D.I. 8..

[79] *Biegler* at n *.

17

estoppel.[80]  The Defendants have not argued that any of those exceptions applies here.  Accordingly, the Court does not consider the Ninth Circuit decision.

The Court first turns to the issue of whether the defendants owed a duty to Biegler.  Delaware courts look to the Restatement (Second) of Torts to determine whether one party owes another a duty of care.[81]  The Restatement (Second) distinguishes between negligent acts ("malfeasance") and negligent omissions ("nonfeasance") for purposes of determining the nature of the duty owed.[82]  Anyone who performs an affirmative act is under a duty to others to "exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act."[83]  Conversely, one who "merely omits to act" generally has no duty to do so, "unless there is a special relationship between the actor and the other which gives rise to the duty."[84]  Here, because Biegler alleges negligence

---

[80] *Palo Verde Investments v. Coach-Net Roadside Assistance,* 2014 WL 12573958, at * 1 (D. Az. Jan. 13, 2014).
[81] *See Doe v. Bradley,* 2011 WL 290829, at *7 (Del. Super. Ct. Jan. 21, 2011)
[82] *Id.* Section § 284 of the Restatement (Second) outlines the difference between these two concepts, noting that negligent conduct may be either:

    (a) an act which the actor as a reasonable man should recognize as involving an unreasonable risk of causing an invasion of an interest of another, or

    (b) a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do.

[83] *Id.* at *5
[84] *Id.*

18

based on the Defendants' actions, the parties agree that there is no need for Biegler to allege the existence of a special relationship.

Why it would be reasonable for the Defendants to owe a duty of care to Biegler and be responsible to him for damages resulting from Fleetlogix's termination of him as its insurance consultant, under the facts alleged in the Complaint, eludes the Court. It is not alleged that the defendants had any particularized knowledge of the professional relationship between Biegler and Fleetlogix, including the terms of any contract they may have had related to the policy at issue here. Nor is it alleged that the Defendants had any reason to know that Biegler's continued retention by Fleetlogix was contingent on the Defendants' performance under the insurance policy, especially where the policy obtained by Biegler contained all of the provisions Fleetlogix required.

Fleetlogix had a contract with the Defendants for the Defendants to provide primary insurance. If the Defendant's properly terminated the contract, as they allege, they are blameless for Fleetlogix ending its relationship with Biegler. Conversely, to the extent that the Defendants terminated that contract in violation of its terms, as Biegler alleges, Fleetlogix, but not Biegler, would have a cause of action against the Defendants for breach of contract.[85] In either case, Biegler's real

---

[85] Interestingly, no mention of any such litigation has been made in this case. The Court assumes none ever was initiated.

complaint is not with the Defendants, but with Fleetlogix. Fleetlogix's collateral termination of Biegler, despite Biegler having obtained a policy meeting Fleetlogix's specifications, is not a reasonable risk the Defendants could or should have foreseen, absent specific factual allegations making the Defendants aware of the risk of that result. The Complaint lacks such specific factual allegations. Accordingly it fails to allege any duty of care the Defendants owed to Biegler.

The Defendants argue that they did not violate the policy's termination provisions when they cancelled Fleetlogix's policy. Maybe, maybe not. They have not chosen to provide the Court with a copy of the policy or the 30-day termination notice. Biegler alleges in the Complaint that the cancellation of the policy violated the policy's conditions of coverage, relevant insurance code provisions and the standard of care in the insurance industry. These allegations are conclusory and unsupported by specific facts. They suffer from the same deficiencies as the Defendants' argument in that Biegler also has not chosen to provide the Court with a copy of the relevant policy provisions, nor has he referenced any specific insurance code provisions. Biegler's reliance on his contention that the Defendants failed to meet the appropriate standard of care is insufficient to avoid dismissal because that contention merely is derivative of his conclusory allegations that the Defendants improperly terminated the policy. Accordingly Count I – Negligence is **DISMISSED.**

**Count III -  Tortious Interference with Prospective Contractual Relations.**

In order to properly state a claim for tortious interference with prospective Contractual relations, a plaintiff must allege "(a) a reasonable probability of a business opportunity or prospective contractual relationship, (b) intentional interference by a defendant with that opportunity, (c) proximate cause, and (d) damages."[86]   While nobody disputes that the Defendants were aware that Biegler had a relationship with Fleetlogix in the context of the policy at issue, the Complaint lacks any allegation that the Defendants were aware of any *prospective* reasonably probable contractual relations between Fleetlogix and Biegler.   Even if the Defendants were aware of such prospective contractual relations, the Complaint fails to allege that interfering with those prospective contractual relations played any role in the Defendants terminating their policy with Fleetlogix.   In other words, the Complaint fails to allege that the Defendants acted intentionally to interfere with any prospective contractual relations between Biegler and Fleetlogix.   For that reason, Count III – Tortious Interference with Prospective Contractual Relation is **DISMISSED.**

---

[86] *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC,* 2010 WL 338219, at *9 (Del. Ch. Jan. 29, 2020); *See also, KT4 Partners LLC v. Palantir Technologies, Inc.* 2018 WL 4033767, at *6 (Del. Super. Aug. 22, 2018 (citing *World Energy Ventures, LLC v. Northwind Gulf Coast LLC,* 2015 WL 7772638, at *6 (Del. Super. Nov. 2, 2015)).

## VI. CONCLUSION

**THEREFORE**, the Motion to Dismiss of Defendants United Specialty Insurance Company and Underwriting Service Management Company, LLC is **GRANTED.** The Complaint is **DISMISSED WITHOUT PREJUDICE.** Plaintiff Mark Biegler is granted leave to file an Amended Complaint within 30 days from the date of this Memorandum Opinion.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.