# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CHARLES SCHIAVO,      )
     )
     Plaintiff,      )
     )   C.A. No. N24C-07-135 FWW
     v.      )
     )
CLOVER NETWORK, LLC,      )
     )
     Defendant.      )

Submitted: December 9, 2024
Decided: February 19, 2025
Corrected: March 3, 20025

*Upon Defendant Clover Network's Motion to Dismiss*

**GRANTED**

## MEMORANDUM OPINION AND ORDER

Charles Schiavo, 829B Culbreath Street, Smyrna, DE 19977, Plaintiff, *pro se*.

Christina B. Vavala, Esquire; Stephen J. Kraftshick, Esquire (argued), POLSINELLI, PA, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801, attorneys for Defendant Clover Network, LLC.

**WHARTON**, **J.**

# I. INTRODUCTION

Plaintiff Charles Schiavo ("Schiavo") has filed Complaints in this case and in *Charles Schiavo v. TD Bank USA National Association*.[1]  Despite being brought separately, the cases are based on the same set of operative facts.  The Complaint against Clover Network, LLC ("Clover") alleges generally that Clover, in concert with TD Bank USA National Association ("TD Bank"), fraudulently deprived him of a credit card payment in the amount of $10,175.00.[2]  He seeks compensatory damages in the amount of $25,000.00 and punitive damages of $150,000.00.[3]

Clover moves to dismiss under Superior Court Civil Rule 12(b)(6) ("Rule 12(b)(6)").[4]  The motion contends that Schiavo's claim is based on Clover's alleged breach of the terms of a processing agreement he had with Clover.[5]  But Clover is not a party to any processing agreement with Schiavo.[6]  Rather, there is a processing agreement between Schiavo and TD Bank.[7]

---

[1] *Charles Schiavo v. TD Bank USA National Association,* C.A. No. N24C-08-107 FWW.  TD Bank also moves to dismiss in that action.
[2] Complaint, D.I. 1.
[3] *Id.*
[4] Def.'s Mot. to Dismiss, D.I. 11.
[5] *Id.* at ¶ 4.
[6] *Id.*
[7] *Id.* at ¶ 5.

For the reasons set forth below, Clover's motion is **GRANTED.** The Complaint is **DISMISSED** without prejudice.

## II.    FACTS AND PROCEDURAL HISTORY

Schiavo owns Jems Classic Autos ("Jems").[8]  Jems signed an estimate with Asplundh Engineering ("Asplundh") to repair a 2023 Ford F-150 turbo vehicle for approximately $29,000.00, less a 10% discount.[9]  On May 26, 2024, Kevin Coin ("Coin") of Asplundh paid Jems $9,500.00 for repairs completed to date.[10]  The payment was made by credit card over the telephone with a Clover representative guiding Schiavo and Coin through the process.[11] The payment was credited to Jems' account on May 28, 2024.[12]  On June 1st, Coin made a second payment of $9,500.00.[13]  This payment also was made by credit card over the telephone, but this time without the assistance of a Clover representative.[14]  On June 3rd, this second $9,500.00 payment was credited to Jem's account.[15]

---

[8] Compl. at ⁋ 5, D.I. 1.  The paragraphs in the Complaint are unnumbered.  For reference purposes, the Court has assigned them numbers sequentially.
[9] *Id.*
[10] *Id.*
[11] *Id..*
[12] *Id.*
[13] *Id.* at ⁋ 6.
[14] *Id.*
[15] *Id.  Also see,* Ex. D.

3

On or about June 16th Coin made a third credit card payment of $10,175.00.[16] But, the Complaint alleges, this payment was never credited to Jem's account "specifically due to fraudulent activity by Clover."[17] The Complaint alleges that after the third payment was "stolen," Schiavo received several telephone calls from Ava who claimed to be a representative of Clover, "the credit card processing company for TD Bank, Dover, Delaware."[18] Ava sent Schiavo an email requesting information she needed to investigate the third credit card payment and requested Schiavo respond with his answers to her questions by email also.[19] Schiavo responded to Ava's email with the help of the manager of the TD Bank branch location in Dover.[20] After sending the email, Schiavo received another phone call from Ava "stating they were alleging fraud and that Clover was going to keep the third credit card payment of $10,175.00 for a minimum of 180 days before Clover could make a clear determination."[21] Schiavo alleges he has made repeated unsuccessful requests for Clover to send him written confirmation of the reasons it

---

[16] *Id.* at ¶ 7.
[17] *Id.*
[18] *Id.* at ¶ 8.
[19] *Id.*
[20] *Id.* at ¶ 9.
[21] *Id.*

is keeping the third payment.[22]  Schiavo also alleges that Clover "stole" an additional $689.00 from his account with no explanation from either Clover or TD Bank.[23]

Finally, Schiavo alleges that he has contacted "the banker for Asplundh Engineering, who works for Bank of America.[24] The banker confirmed that Coin is an authorized user of Asplundh's credit card used to make the third payment and that the third payment "has been ***transferred*** to Clover."[25]

Schiavo speculates that Clover is behaving in this way because  it "knows it will take four to six months and ten thousand dollars in legal fees to properly litigate this matter, plus, the desire to fight this type of chicanery is absent from the average individual."[26]  He further speculates that Clover knows that "incompetent' and biased regulatory agencies are too lazy to take any disciplinary action against it.[27] So, it has decided to take advantage of a "very corrupt and broken system."[28]

On August 20, 2024, Clover moved to dismiss pursuant to Rule 12(b)(6).[29]  It argues that there is no contractual relationship between it and Jems/Schiavo as

---

[22] *Id.* at ¶ 10.
[23] *Id.* at ¶ 11.
[24] *Id.* at ¶ 13.
[25] *Id.* (emphasis in original).
[26] *Id.* at ¶ 14.
[27] *Id.*
[28] *Id.*
[29] Def.'s Mot. to Dismiss, D.I. 11.

alleged in the Complaint, and, thus, the Complaint fails to state a claim.[30] After briefing, the Court heard argument jointly on this case and Schiavo's suit against TD Bank on December 9, 2024.[31]

## III. THE PARTIES' CONTENTIONS

Clover's Motion to Dismiss makes a single argument for dismissal under Rule 12(b)(6). It contends that Schiavo's claim is based on an alleged breach of "'the terms of'" Clover's processing agreement with him.[32] But, Clover has no processing agreement with Jems.[33] Rather, Jems entered into a Merchant Processing Application and Agreement ("Processing Agreement") with TD Bank.[34] According to Clover, Jems contracted with TD Bank to process and settle Jems' transactions and Clover merely provided point of sale terminals and software to Schiavo to utilize for those transactions.[35] For that reason, any claims Schiavo might have are more properly brought against TD Bank, according to Clover.[36]

---

[30] *Id.*
[31] D.I. 24.
[32] Def.'s Mot. to Dismiss, at ₱ 4, D.I. 11. (quoting the Complaint).
[33] *Id.*
[34] *Id.* Clover attached a copy of its agreement with TD Bank to the Motion as Ex. A.
[35] *Id.* at ₱ 6.
[36] *Id.* at ₱ 7

Schiavo's Response is largely a reaffirmation of the veracity of his allegations, complete with what he contends are supporting documents.[37] He questions why Clover was processing credit card payments for him for the past thirteen months, including the first two Asplundh payments, if it had no responsibility to do so.[38] More importantly, Schiavo denies the premise of Clover's motion – that he alleged a contractual relationship between Jems and Clover.

> The facts are Plaintiff stated Clover was the credit card processing company for TD Bank at least ***ten times*** in Plaintiff's original complaint, so there is no ambiguity in the disclaimer made by the Plaintiff in the original complaint, the facts are Clover had a responsibility to legally and ethically process the credit card payments for TD's customers who were previously approved by Clover and subsequently, signed the Merchant Processing Agreement.[39]

Finally, he disputes Clover's contention that his claims are more properly brought against TD Bank.

> ***In addition, TD Bank at 11 of the "Merchant Processing Agreement" says if Plaintiff doesn't receive the credit card payment[s], TD Bank is not responsible, consequently, the Plaintiff has every right and***

---

[37] Pl.'s Resp., D.I. 16.

[38] *Id.* at 4.  The pages in Schiavo's Response are unnumbered.  For citation purposes, the Court has assigned them page numbers beginning with the caption page.

[39] *Id.* at 10 (emphasis in original).

7

*__responsibility to file a complaint against Clover, which is the credit card processing company for TD Bank.__*[40]

In reply, Clover notes that Schiavo cannot insert additional documents in his response that are not already incorporated in the Complaint.[41] It reasserts it position that it had no contractual relationship with Jems and only provides point-of-sale devices and related services to merchants but not payment processing services.[42] Clover further argues that Schiavo misreads the Processing Agreement's defined terms. The Processing Agreement defines TD Bank as both the "Bank" and "Processor."[43] Under the Processing Agreement, Clover is not the "Processor" as Schiavo mistakenly alleges.[44] Clover cites the exhibits that it claims Schiavo improperly attached to his Response as supporting its contention that any claim Schiavo might have is against TD Bank and not it.[45] Finally, in Clover's view, absent any contract between it and Jems, the only way for Schiavo to state a claim against Clover would be for it to allege that Clover was a third-party beneficiary, which he has not pled.[46]

---

[40] *Id.* at 14 (emphasis in original).
[41] Def.'s Reply, at ¶ 2, D.I. 19.
[42] *Id.* at ¶ 3.
[43] *Id.* at ¶ 5.
[44] *Id.*
[45] *Id.* at ¶ 6.
[46] *Id.* at ¶ 7.

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Superior Court Rule 12(b)(6) will not be granted if the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[47] The Court's review is limited to the well-pled allegations in the complaint.[48] In ruling on a 12(b)(6) motion, the Court "must draw all reasonable factual inferences in favor of the party opposing the motion."[49] Dismissal is warranted "only if it appears with reasonable certainty that the plaintiff could not prove any set of facts that would entitle him to relief."[50] However, the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[51] The Court may, "despite allegations to the contrary," dismiss a complaint "where the unambiguous language of documents upon which the claims are based contradict the complaint's allegations."[52]

## V. DISCUSSION

---

[47] *Browne v. Robb*, 583 A.2d 949, 950 (Del. 1990).
[48] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005).
[49] *Id.*
[50] *Id.*
[51] *Ramunno v. Cawley,* 705 A.2d 1029, 10345 (Del. 1998).
[52] *Tigani v. C.I.P. Assocs., LLC,* 2020 WL 2037241, at v*2 (Del. Apr. 27, 2020) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1083 Del. 2001).

9

At the outset, the Court establishes the parameters for what information among the various filings and arguments in the record it properly considers in resolving the Motion. The Court's review is limited to the well-pled allegations in the Complaint. Additionally, however, the Court may consider matters outside the Complaint "when a document is integral to a claim incorporated into a complaint."[53] "Generally, a document is integral to a complaint if it is the 'source for the … facts as pled in the complaint.'"[54]

Clover has attached the Processing Agreement referenced in the Complaint to its Motion.[55] Schiavo claims, *inter alia*, that Clover breached the terms of that agreement.[56] Accordingly, the Court finds the Processing Agreement integral to the Complaint and considers it in resolving the Motion.

Schiavo has attached 16 exhibits to his Response. Five of the exhibits are attached to the Complaint also.[57] Nevertheless, Clover objects to the insertion of all of the exhibits to Schiavo's Response.[58] Accordingly, the Court examines each to

---

[53] *Fortis Advisors LLC v. Allergen W. C. Holding, Inc.* 2019 WL 5588876, at *3, (Del. Ch. Oct. 30, 2019).
[54] *Id.*
[55] Def.'s Mot. to Dismiss, Ex A, D.I. 11.
[56] Complaint at ℙ 1, D.I. 1.
[57] *Id.* at Exs. A-F.
[58] Def.'s Reply at ℙ 2, D.I. 19.

determine if it is integral to the Complaint. Of the 16, two – Exhibits A[59] and A-1 - are simply Court documents, including the Complaint and documents related to service of process, and are irrelevant to the issues raised by the Motion.[60] The others are: (1) Jems business license, also attached to the Complaint as Exhibit A;[61] (2) the estimate for the repair of the Asplundh truck, also attached to the Complaint as Exhibit B;[62] (3) Jems' TD Bank statement showing the deposit of the first payment of $9,500.00, also attached to the Complaint as Exhibit C;[63] (4) Jems' TD Bank statement showing the deposit of the second payment of $9,500.00, also attached to the Complaint as Exhibit D;[64] (5) Bank of America statement for "Kevin C. Coin Asplundh Engineering" showing a "Resolved Disputed Transaction" with Jems in the amount of $10,175.00 from June 19th, "resolved" in favor of Asplundh and credited to Asplundh on July 3rd in that amount;[65] (6) Risk Review Notification dated June 20, 2024 from Merchant Services Risk Review Management to Schiavo requesting additional information to validate a change in Jems' processing volume, also attached to the Complaint as Exhibit E;[66] (7) Jems' TD Bank statement showing

---

[59] There are two Exhibit As. The first is the Complaint and related service of process documents. The second is Jems' business license.

[60] *Id.* at unnumbered exhibit and Ex. A-1.

[61] *Id.* at Ex. A.

[62] *Id.* at Ex. B.

[63] *Id.* at Ex. C.

[64] *Id.* at Ex. D.

[65] *Id.* at Ex. E.

[66] *Id.* at Ex. F.

11

debits of $688.93 and $35.10 on July 3rd, also attached to the Complaint as Exhibit F;[67] (8) letter dated July 24, 2024 from Jason Blusk to Schiavo;[68] (9) letter dated August 9, 2024 from Schiavo to Jason Blusk;[69] (10) unreadably poor copy of a letter to Kevin Coin dated July 3(?), 2024 asking him to keep copies of all documents related to his charges;[70] (11) duplicate of Bank of America statement for "Kevin C. Coin Asplundh Engineering";[71] (12) duplicate of unreadable letter to Kevin Coin;[72] (13) TD Bank statements for Jems from August 2023 through June 2024;[73] (14) duplicate of Ex. D;[74] (15) duplicate of Exhibit E;[75] and (16) letter from Schiavo to Channing Heng dated July 12, 2024.[76] Excluding duplicates, there are 11 substantive exhibits, one of which is unreadable. Of the ten remaining exhibits, six are attached to the Complaint. The Court finds that the other four are integral to the Complaint as each of them are sources for facts pled in the Complaint, with the exception of TD Bank statements for Jems from August 2023 through April 2024 which are not. Statements for May and June are integral as they too are sources for

---

[67] *Id.* Ex. G-1.
[68] *Id.* Ex. H.
[69] *Id.* Ex. I.
[70] *Id.* Ex. J.
[71] *Id.* Ex. B-1.
[72] *Id.* Ex. B-2.
[73] *Id.* Ex. C. There appear to be two different exhibits labeled "Exhibit C."
[74] *Id.* Ex. D.
[75] *Id.* Ex. E.
[76] *Id.* Ex. F. There appear to be two different exhibits labeled Exhibit F.

facts pled in the Complaint. To be clear then, in resolving this Motion, the Court considers only the Complaint, exhibits it finds integral to the Complaint, including those attached to it, and arguments related to the Complaint and such integral exhibits.

At the outset, the Court is confronted with at least two difficulties in determining whether the Complaint can survive a Rule 12(b)(6) challenge. The first is the Complaint itself. Rule 10(b) speaks to the form of pleadings:

> (b) *Paragraphs: Separate statements.* All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.[77]

The Complaint makes no attempt to comply with the rule. Rather it consists of seven pages of narrative and argument in unnumbered paragraphs.[78] While Schiavo's failure to number the paragraphs of the Complaint can be overcome, his failure to separate his various allegations of wrongdoing into separate counts is more problematic. This failure has caused opposing

---

[77] Super. Ct. Civ. R. 10(b).
[78] Complaint, D.I. 1.

13

counsel and the Court to sift through the Complaint in an attempt to identify specific theories of liability, and the facts purporting to support the necessary elements of each theory. Schiavo's Response presents its own set of difficulties. Rule 78(b) limits responses in opposition to motions to six pages in length.[79] Again, Schiavo makes no attempt to comply with the rule. His Response runs to 23 pages, including the caption page.[80]

Clover focuses its Motion on Schiavo's claim that "Clover 'breached the terms' of its processing agreement with Plaintiff by 'keeping approximately 11,000.00 dollars of the Plaintiff's money.'"[81] Clover's argument is simple – it did not breach the terms of any processing agreement it had with Jems because it was not a party to any processing agreement with Jems.[82] The Processing Agreement was between Jems and TD Bank.[83] Clover inarguably is correct – it is not a party to the Processing Agreement.[84] Indeed, Schiavo says as much in his Response - "The facts are Plaintiff states Clover was the credit card processing company for TD Bank at least _**ten times**_ in Plaintiff's original complaint."[85] Therefore, Schiavo has failed

---

[79] Super. Ct. Civ. R. 78(b).
[80] Pl.'s Resp., D.I. 16.
[81] Def.'s Mot. to Dismiss, at ¶¶ 1, 4 (quoting Compl. at 20), D.I. 11.
[82] *Id.* at ¶ 4.
[83] *Id.* at ¶ 5.
[84] *Id.* at Ex. A.
[85] Pl.'s Resp. at 10, D.I. 16.

to state a claim for breach of contract. But, Schiavo seems to be making an argument that Jems is a third party beneficiary of an agreement Clover had with TD Bank – "[T]he facts are clover had a responsibility to legally and ethically process the credit card payments for TD Bank's customers who were previously approved by Clover and subsequently signed the Merchant Processing Agreement."[86] If that is Schiavo's claim, he fails to make it adequately in his Complaint.

Breach of contract is not the only claim Schiavo makes. It is not even his most serious allegation. He alleges that Clover engaged in criminal behavior when it "stole" $10,175.00 from him together with an additional $698.00.[87] He further opines as to Clover's motive. He posits that Clover is "***taking advantage*** of a very corrupt and broken system" by continuing to hold the $10,175.00.[88] The problem with this contention is that Schiavo refutes it in his Response. He attaches as Exhibit E and Exhibit B-1,[89] a Bank of America statement for "Kevin C. Coin Asplundh Engineering." The statement shows that Asplundh was credited with $10,175.00 on July 3, 2024 relating to a June 19th transaction with Jems.[90] The statement shows that the money was returned to Asplundh as a result of a dispute that was resolved

---

[86] *Id.*
[87] Complaint at ¶¶ 1, 8, 11, 14
[88] *Id.* at ¶ 15.
[89] It is unclear why Schiavo attaches it twice.
[90] Pl.'s Resp. at Exs E and B-1.

in favor of its client – Asplundh.[91]  The Court may, "despite allegations to the contrary," dismiss a complaint "where the unambiguous language of documents upon which the claims are based contradict the complaint's allegations."[92]  Here the Bank of America statement unambiguously contradicts Schiavo's claim that Clover stole and kept the $10,175.00.  Asplundh had the money two weeks after the unsuccessful third transaction.  Therefore any allegation against Clover based on theft fails to state a claim.[93]

## VI. CONCLUSION

**THEREFORE,**  for the reasons explained above, Defendant Clover Network, LLC's Motion to  Dismiss is **GRANTED.**  The Complaint is **DISMISSED** without

---

[91] *Id.*

[92] *Tigani v. C.I.P. Assocs., LLC,* 2020 WL 2037241, at v*2 (Del. Apr. 27, 2020) (citing *Malpiede v. Townson*, 780 A.2d 1075, 1083 Del. 2001).

[93] Despite the Court concluding that Schiavo has failed to state claims upon which he could obtain relief against Clover, there are certain facts which do not appear to be in dispute.  They are; (1) Jems had a contract with Asplundh to repair Asplundh's truck;  (2) the first two payments, made by Kevin Coin on behalf of Asplundh, were successfully deposited in Jems' account; (3) Kevin Coin was authorized to use the Asplundh credit card; (4) for whatever reason, the third payment of  $10,175.00 was never successfully deposited into Jems' account; and (5) the third unsuccessful payment was returned to Asplundh's Bank of America account two weeks after the unsuccessful transaction.  If, as Schiavo contends, Asplundh was willing to make the third payment and had the funds from the unsuccessful attempt in its account, why did Schiavo and Asplundh not try to complete the payment again, either by credit card or by an alternative payment method?  No answer to that question has ever been tendered to the Court.

16

prejudice. Plaintiff Charles Schiavo is granted leave to file an Amended Complaint no later than 30 days after the date of the original Memorandum Opinion and Order – February 19, 2025 - subject to the following conditions:

1. Any Amended Complaint shall comply with the pleading requirements of Superior Court Civil Rules 8(a), 9(b) (if fraud is alleged), and 10 (especially 10(b));

**2.** Each claim shall state all of the elements necessary to allege such claim or risk dismissal with prejudice upon appropriate motion;

**3.** Such Amended Complaint may join Clover Network, LLC and TD Bank USA National Association as well as any other prospective defendant in a single Amended Complaint either under this case, or under *Schiavo v. TD Bank National Association,* C.A. No. N24C-08-107 FWW; and

**4.** The Court will strike any Amended Complaint that includes language personally attacking opposing counsel or the Court.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.